# EXHIBIT G

CV-18-00605972-0000

Court File No.

# ONTARIO
## SUPERIOR COURT OF JUSTICE

B E T W E E N :



### PREMIUM PROPERTIES LIMITED, COLONIA TRUSTCO INC., JAAM LTD., CORINTHIAN ENTERPRISES INC. and MCFLOW CAPITAL CORP.

Plaintiffs

- and -

### CREATIVE WEALTH MEDIA FINANCE CORP., HENCHMEN PRODUCTIONS INC., JASON CLOTH and BRON STUDIOS USA, INC.

Defendants

## STATEMENT OF CLAIM

TO THE DEFENDANTS:

**A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU** by the Plaintiffs.  The claim made against you is set out in the following pages.

**IF YOU WISH TO DEFEND THIS PROCEEDING**, you or an Ontario lawyer acting for you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the Plaintiffs' lawyers or, where the Plaintiffs do not have a lawyer, serve it on the Plaintiffs, and file it, with proof of service in this court office, **WITHIN TWENTY DAYS** after this Statement of Claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your Statement of Defence is forty days.  If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure.  This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU.  IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

TAKE NOTICE: THIS ACTION WILL AUTOMATICALLY BE DISMISSED if it has not been set down for trial or terminated by any means within five years after the action was commenced unless otherwise ordered by the court.

Date: September 27, 2018

Issued by: _____
Local Registrar

Address of Court Office:

393 University Avenue
10th Floor
Toronto, ON  M5G 1E6

TO:         **CREATIVE WEALTH MEDIA FINANCE CORP.**
            151 Bloor Street West, Suite 700
            Toronto, ON, M5S 1S4

AND TO:     **HENCHMEN PRODUCTIONS INC.**
            1000-595 Burrard Street
            Vancouver, BC, V7X 1S8

AND TO:     **JASON CLOTH**
            20 Stratheden Road
            Toronto, ON, M4N 1E3

AND TO:     **BRON STUDIOS USA, INC.**
            c/o Aaron Gilbert
            President and Director
            5542 Short Street
            Burnaby, BC, V5J 1L9

# CLAIM

1.  The Plaintiffs claim as against Henchmen Productions Inc. ("**Henchmen**"):

 (a) $1,000,000 principal owing to each of the Plaintiffs, Premium Properties Limited ("**Premium**") and McFlow Capital Corp. ("**McFlow**"), for repayment of Tax Credit Loans (as defined in this Statement of Claim) made to Henchmen pursuant to agreements dated July 27, 2015;

 (b) $600,000 principal owing to each of the Plaintiffs, Premium and Colonia Trustco Inc. ("**Colonia**"), for repayment of Gap Loans (as defined in this Statement of Claim) made to Henchmen pursuant to agreements dated May 8, 2015;

 (c) $550,000 principal owing to each of the Plaintiffs, Premium and Colonia, for repayment of Gap Loans made to Henchmen and Bron Studios USA, Inc. by agreements dated February 6, 2015;

 (d) An accounting of the revenues and expenses for the movie "Henchmen";

 (e) An accounting of the tax credits for Henchmen;

 (f) An accounting of the "Net Profits" of the movie "Henchmen" and judgment for the Plaintiffs for their share of 30% of the "Net Profits";

 (g) $138,000 owing to JAAM Ltd. ("**JAAM**") by Henchmen under two Management Services Agreements dated February 6, 2015 and May 8, 2015;

(h)     $66,000 owing to Corinthian Enterprises Inc. ("**Corinthian**") by Henchmen under a Management Services Agreement dated February 6, 2015;

(i)     $72,000 owing to Colonia by Henchmen under a Management Services Agreement dated May 8, 2015;

(j)     Interest owing to the Plaintiffs as provided for in the various Tax Credit Loans, Gap Loans and Management Services Agreements;

(k)     In the alternative, pre-judgment and post-judgment interest pursuant to the *Courts of Justice Act*;

(l)     Their costs of this action; and

(m)     Such further and other relief as counsel may advise and this Honourable Court deems just.

2.     The Plaintiffs claim as against Creative Wealth Media Finance Corp. ("**Creative Wealth**"):

(a)     Damages in the amount of $4,300,000 for breach of trust and breach of contract;

(b)     $138,000 owing to JAAM by Creative Wealth under two Management Services Agreements dated February 6, 2015 and May 8, 2015;

(c)     $66,000 owing to Corinthian by Creative Wealth under a Management Services Agreement dated February 6, 2015;

(d)     $72,000 owing to Colonia by Creative Wealth under a Management Services Agreement dated May 8, 2015;

(e)     An accounting of Creative Wealth's 25% of Henchmen's Adjusted Gross Receipts and judgment against Creative Wealth for 7.65% of such Receipts in favour of each of JAAM and Colonia;

(f)     An accounting of Henchmen's Adjusted Gross Receipts and judgment against Creative Wealth for 7.3% of such Receipts in favour of each of JAAM and Corinthian;

(g)     An accounting of the "Net Profits" of the movie "Henchmen" and judgment for the Plaintiffs for their share of 30% of the "Net Profits";

(h)     Interest owing to the Plaintiffs as provided for in the various Tax Credit Loans, Gap Loans and Management Services Agreements;

(i)     In the alternative, pre-judgment and post-judgment interest pursuant to the *Courts of Justice Act*;

(j)     Their costs of this action; and

(k)     Such further and other relief as counsel may advise and this Honourable Court deems just.

3.     The Plaintiffs claim as against Bron Studios USA, Inc. ("**Bron Studios**"):

(a)     $550,000 principal owing to each of the Plaintiffs, Premium and Colonia, for repayment of Gap Loans made to Henchmen and Bron Studios by agreements dated February 6, 2015;

(b)     $138,000 owing to JAAM by Bron Studios under two Management Services Agreements dated February 6, 2015 and May 8, 2015;

(c)     $66,000 owing to Corinthian by Bron Studios under a Management Services Agreement dated February 6, 2015;

(d)     $72,000 owing to Colonia by Bron Studios under a Management Services Agreement dated May 8, 2015;

(e)     Pre-judgment and post-judgment interest pursuant to the *Courts of Justice Act*;

(f)     Their costs of this action; and

(g)     Such further and other relief as counsel may advise and this Honourable Court deems just.

4.      The Plaintiffs claim as against Jason Cloth ("**Cloth**"):

(a)     Damages in the amount of $4,300,000 for negligent misrepresentation and breach of trust;

(b)     An accounting of Henchmen's Adjusted Gross Receipts and payment to the Plaintiffs of their shares of the revenues to which they are entitled under various Loan Agreements and Management Services Agreements;

(c)      Interest owing to the Plaintiffs as provided for in the various Tax Credit Loans and Gap Loans;

(d)      Pre-judgment and post-judgment interest pursuant to the *Courts of Justice Act*;

(e)      Their costs of this action; and

(f)      Such further and other relief as counsel may advise and this Honourable Court deems just.

## **THE PARTIES**

5.      The Plaintiffs, Premium, JAAM, McFlow and Colonia, are companies incorporated under the laws of the Province of Ontario with their head offices located in the City of Toronto.   The Plaintiffs are all related companies.   The main business of the Plaintiffs is owning, managing and financing real estate. As will be described in this Statement of Claim, the Plaintiffs provided financing to Henchmen through Creative Wealth for producing a film titled "Henchmen" (the "**Picture**").

6.      Henchmen is a company incorporated pursuant to the laws of the Province of British Columbia with its head office located in Vancouver, British Columbia.   Henchmen carries on business as a producer of the Picture.

7.      Creative Wealth is a company incorporated pursuant to the laws of the Province of Ontario with its head office in Toronto, Ontario.   Creative Wealth is in the business of arranging financing for feature length motion pictures, including the Picture.

8.        Bron Studios is a company incorporated pursuant to the laws of the state of Nevada, one of the United States of America.  Bron Studios' officers and directors reside in British Columbia and Bron Studios carries on business as a producer and financier of movies in British Columbia and Ontario.

9.        Cloth resides in Toronto, Ontario and is the chief executive officer, managing partner and directing mind of Creative Wealth.

**BACKGROUND**

10.       In or about mid-2014, the Plaintiffs were introduced to Cloth and Creative Wealth through a mutual business connection.  Following that introduction Cloth contacted Mr. Milton Winberg ("**Winberg**") and Mr. Andrew Pollack ("**Pollack**"), principals of the Plaintiffs, soliciting investments in films that Cloth was financing through Creative Wealth, of which Cloth is the directing mind.

11.       Cloth represented to Winberg and Pollack that he and Creative Wealth had a relationship with Mr. Aaron Gilbert and his companies that were very successful in producing movies and were, in fact, in the top 5% of successful movie producers.

12.       To entice Winberg and Pollack to invest in movies, Cloth analogized investing in movies to investing in real estate.  Cloth represented that any investment would always be secured and repayment would be in first priority subject only to a priority for guilds and unions. Cloth also represented that each investment would be protected by the appointment of a collection account manager with a Collection Account Management Agreement ("**CAMA**") to ensure collection and repayment of the investments and their priority.

13.          In reliance on the representations made by Cloth, Winberg and Pollack agreed to invest, through companies of which they are the principals, in movies with Cloth and Creative Wealth.  The investments took the form of loans and started in mid to late 2014 and initially were successful with principal, interest and share of gross proceeds being paid.

## THE MOVIE "HENCHMEN" (The Picture)

## GAP LOANS

14.          On or about January 15, 2015, Creative Wealth executed a master term sheet with Henchmen ("**Master Term Sheet**") for financing the Picture, a full-length animated film.  The Master Term Sheet was effective as of October 22, 2014, and provided for Creative Wealth advancing two loans to Henchmen.  The first loan was a "Gap Loan" ("**Gap Loan**") in the total amount of $7,810,000 which matured 24 months from the initial disbursement of the Gap Loan. The second loan was a "Tax Credit Financing Loan" to be in the total amount approved by Creative Wealth.  The approved budget for the film was $21,000,000.

15.          The Master Term Sheet provided, among other things:

(a)     The Gap Loan will bear interest at a rate of 14%  per annum until the maturity date and 17% per annum thereafter, with a minimum of 12 months of interest;

(b)     Subject to some exceptions, the Gap Loan shall be secured in first priority position by all of Henchmen's assets;

(c)     Creative Wealth will be able to recoup the Gap Loan plus interest and charges in first position from "all gross receipts derived from exploitation" of the Picture and

ancillary rights worldwide and 50% of any "excess" tax incentives that are not required to repay the Tax Credit Loans;

(d)     Creative Wealth is to receive 30% of the Picture's "Net Profits";

(e)     Henchmen would enter into the Financing Documents set out in the Master Term Sheet as a condition precedent prior to any advances under the Gap Loan; and

(f)     All revenues from exploitation of the Picture would be paid into a collection account to be administered by an approved collection account manager.

16.     In early 2015, Cloth, on behalf of Creative Wealth, proposed to Winberg and Pollack that they participate in the two loans to be advanced by Creative Wealth to Henchmen as provided for in the Master Term Sheet.

17.     Cloth repeated to Winberg and Pollack the representations set out in paragraphs 11 and 12 above.  He also represented that the Picture had been sold to Universal, the film would be delivered in the summer of 2016, the Picture was being co-produced by Will Ferrell , and "big names", including Gerard Butler and Michael Cera would do the voice overs.   Cloth also represented that Telefilm Canada would invest $4 million in the Picture, there would be $9.4 million in tax credits and the Royal Bank of Canada would also participate in the Tax Credit Loan as an investor.  The investment was represented as being as close as you can get to a sure thing and that repayment did not depend on success at the box office.  The Tax Credit Loan was represented as "good as gold".

18.     The Plaintiffs relied on the representations made by Cloth to Winberg and Pollack and agreed to participate in the financing of the Picture through the Plaintiffs.

**First JAAM Gap Loan**

19.         On or about February 6, 2015, JAAM entered into two agreements with Creative Wealth and Bron Studios, a Lending Agreement and a Participation Agreement.  Pursuant to the lending agreement JAAM agreed to participate in the Gap Loan described in paragraphs 14 and 15 above ("**1st JAAM Gap Loan**").  The lending agreement is often referred to as the Term Sheet ("**JAAM 1st Term Sheet**").  JAAM agreed to advance to Creative Wealth $550,000, representing a 7.29% share of the Gap Loan, all of which was to be advanced by Creative Wealth on behalf of JAAM to Henchmen.  Bron Studios also executed the JAAM 1st Term Sheet as a borrower.

20.         The JAAM 1st Term Sheet provides, among other things:

(a)     The 1st JAAM Gap Loan will bear an annual rate of interest of 2% per annum compounded annually until the Maturity Date and 17% per annum compounded monthly thereafter, with a minimum interest payment equal to 12 months of interest;

(b)     The obligations of Henchmen were to be secured in first priority position by all of Henchmen's assets and include a general security agreement and a guarantee by Bron Studios Inc. and Bron Animation Inc., companies controlled by Mr. Aaron Gilbert;

(c)     The subordination of the 1st JAAM Gap Loan for limited purposes set out in the JAAM 1st Term Sheet;

(d)     Henchmen will enter into the Financing Documents specified in the JAAM 1st Term Sheet, including the collection account management agreement, as a condition precedent prior to any advances under the 1st JAAM Gap Loan being made to Henchmen; and

(e)     The 1st JAAM Gap Loan matures in 24 months from the initial disbursement of the 1st JAAM Gap Loan.

21.     The initial disbursement of the 1st JAAM Gap Loan occurred on or about February 6, 2015, so that it matured on or about February 6, 2017.  Henchmen has not repaid the 1st JAAM Gap Loan which is past due and payable along with the interest provided for in the JAAM 1st Term Sheet.

22.     At the same time that JAAM executed the JAAM 1st Term Sheet, JAAM also executed a Participation Agreement with Creative Wealth ("**JAAM 1st Participation Agreement**").   Under the JAAM 1st Participation Agreement, Creative sold to JAAM "an undivided fractional interest in all present and future Advances made from time to time by Senior Lender [Creative Wealth] to the Producer [Henchmen] (the "Participation") which Participation shall be to the extent of $550,000 (7.29%) percent (*sic*) of the Advances but in no event to exceed $7,535,000.00."

23.     The JAAM 1st Participation Agreement provides that Creative Wealth sold and JAAM purchased an undivided fractional interest in the Gap Loan, including the right to a share of Creative Wealth's 30% of the Picture's "Net Profits".  The JAAM 1st Participation Agreement also provides among other things:

(a)     Creative Wealth retains in its name, on behalf of JAAM, all of the obligations of Henchmen to Creative Wealth under the 1st JAAM Gap Loan;

(b)     Creative Wealth is to ensure that all loan documents and security provided for under the Master Term Sheet and the JAAM 1st Participation Agreement are in place before any funds are advanced;

(c)     Creative Wealth is to enforce payments with respect to the 1st JAAM Gap Loan from Henchmen, any guarantor, or other entity liable in respect of Henchmen's obligations and realize on any collateral;

(d)     Creative Wealth is a trustee for JAAM in administering and servicing the 1st JAAM Gap Loan and all rights, remedies and benefits under the 1st JAAM Gap Loan and any money received by Creative Wealth with respect to JAAM's interest in the 1st JAAM Gap Loan shall be held in trust for JAAM;

(e)     The Master Term Sheet is not to be modified, altered or amended in any material respect without JAAM's prior approval, unless 66 2/3% of other participants in the Gap Loan approve; and

(f)     Creative Wealth is to provide JAAM with such information relating to the 1st JAAM Gap Loan as requested by JAAM, including copies of papers and documents relating to collateral.

24.     By an assignment dated as of January 1st, 2017 JAAM assigned all of its interest in the JAAM 1st Term Sheet and the JAAM 1st Participation Agreement to Premium.

**First Colonia (Corinthian) Gap Loan**[1]

25.          On or about February 6, 2015, Corinthian also entered into two agreements with Creative Wealth and Bron Studios, a Lending Agreement ("**Colonia 1st Term Sheet**") and a Participation Agreement ("**Colonia 1st Participation Agreement**"), to participate in the Gap Loan ("**1st Colonia Gap Loan**").  The Colonia 1st Term Sheet and the Colonia 1st Participation Agreement contain the same terms and conditions as the JAAM 1st Term Sheet and the JAAM 1st Participation Agreement, which are set out in paragraphs 19, 20, 22 and 23 above.  Corinthian agreed to advance to Creative Wealth $550,000, representing a 7.29% share of the Gap Loan, all of which was to be advanced by Creative Wealth on behalf of Corinthian to Henchmen.  Bron Studios also executed the JAAM 1st Term Sheet as a borrower and is liable for the repayment of the 1st Colonia Gap Loan and other money owing under that loan.

26.          By an assignment dated as of January 1st, 2017, Corinthian assigned all of its interest in the Colonia 1st Term Sheet and the Colonia 1st Participation Agreement to Colonia.

27.          The 1st Colonia Gap Loan matured on or about May 8, 2017.  Henchmen has not repaid the 1st Colonia Gap Loan which is past due and payable along with the interest provided for in the Colonia 1st Term Sheet.

**Second JAAM Gap Loan**

28.          In or about May, 2015, Cloth represented to Winberg and Pollack that the Gap Loan would be increased by $1,200,000 to finance edits to the Picture required by Universal.

---

[1] The Lending Agreement and Participation Agreement were entered into by Corinthian but subsequently assigned to Colonia.  For ease of reference  they are referred to as the Colonia 1st Term Sheet and the Colonia 1st Participation Agreement.

29.         On or about May 8, 2015, JAAM entered into two more agreements with Creative Wealth, a Lending Agreement ("**JAAM 2nd Term Sheet**") and a Participation Agreement ("**JAAM 2nd Participation Agreement**") for funding additional advances under the Gap Loan ("**2nd JAAM Gap Loan**").  The total amount of the Gap Loan was increased to $8,735,000 from $7,535,000.  Pursuant to the JAAM 2nd Term Sheet JAAM agreed to participate in additional advances under the Gap Loan.  JAAM agreed to advance to Creative Wealth $600,000 representing a 7.65% share of this  Gap Loan, all of which was to be advanced by Creative Wealth on behalf of JAAM to Henchmen.

30.         The terms and conditions of both the JAAM 2nd Term Sheet and JAAM 2nd Participation Agreement are the same as the JAAM 1st Term Sheet and the JAAM 1st Participation Agreement, except for the amount of the Gap Loan, the amount of JAAM's investment, the increase of the approved production budget of the Picture to $22,200,000 and the maturity date.  The 2nd JAAM Gap Loan matured on or about May 8, 2017.  Henchman has not repaid the 2nd JAAM Gap Loan which is past due and payable along with the interest provided for in the JAAM 2nd Term Sheet.

31.         By an assignment dated as of January 1st, 2017  JAAM assigned all of its interest in the JAAM 2nd Term Sheet and the JAAM 2nd Participation Agreement to Premium.

**Second Colonia Gap Loan**

32.         On or about May 8, 2015, Colonia also entered into two agreements with Creative Wealth, a Lending Agreement ("**Colonia 2nd Term Sheet**") and a Participation Agreement ("**Colonia 2nd Participation Agreement**"), to fund the increase in the Gap Loan to $8,735,000

("**2nd Colonia Gap Loan**").  Pursuant to the Colonia 2nd Term Sheet, Colonia agreed to advance to Creative Wealth $600,000, representing a 7.65% share of the  Gap Loan to Henchmen.

33.      The terms and conditions of both the Colonia 2nd Term Sheet and Colonia 2nd Participation Agreement are the same as the JAAM 1st Term Sheet, the Colonia 1st Term Sheet, the JAAM 1st Participation Agreement and the Colonia 1st Participation Agreement, except for the amount of the loan, the amount of Colonia's investment, the increase of the approved production budget of the Picture to $22,200,000 and the maturity date.  The 2nd Colonia Gap Loan matured on or about May 8, 2017.  Henchman has not repaid the 2nd Colonia Gap Loan which is past due and payable along with the interest provided for in the Colonia 2nd Term Sheet.

## TAX CREDIT LOANS

### JAAM Tax Credit Loan

34.      The second type of loan provided for in the Master Term Sheet are loans referred to as "Tax Credit Loans".  On or about July 27, 2015, JAAM entered into two agreements with Creative Wealth,  a Lending Agreement ("**JAAM Tax Credit Term Sheet**") and Participation Agreement ("**JAAM Tax Credit Participation Agreement**") for the purposes of investing in the Tax Credit Loans being advanced under the Master Term Sheet.  JAAM provided $1 million to Creative Wealth to advance on behalf of JAAM to Henchmen which represents 11.675% of the total Tax Credit Loan of $8,735,000.

35.      The terms and conditions of both the JAAM Tax Credit Term Sheet and the JAAM Tax Credit Participation Agreement are similar to the Term Sheets and Participation Agreements for the Gap Loan, except for the amount of the Tax Credit Loan, the amount of

JAAM's investment, the interest rate, the priority of security to be taken by the tax credit lenders in the tax credit proceeds and the *pro rata* and *pari passu* sharing of such proceeds with a bank lender and the maturity date.  Interest is payable at the rate of 10% compounded annually.  The Tax Credit Loan matured on or about October 27, 2016, 15 months from the initial distribution of the loan.  Henchman has not repaid the Tax Credit Loan which is past due and payable together with interest provided for in the JAAM Tax Credit Term Sheet.

36.      By an assignment dated as of January 1st, 2017, JAAM assigned all of its interest in the JAAM Tax Credit Term Sheet and the JAAM Tax Credit Participation Agreement to Premium.

**McFlow Tax Credit Loan**

37.      On or about July 27, 2015 McFlow also entered into two agreements with Creative Wealth, a Lending Agreement ("**McFlow Tax Credit Term Sheet**") and a Participation Agreement ("**McFlow Tax Credit Participation Agreement**") to participate in the Tax Credit Loan.  McFlow provided $1 million to Creative Wealth to advance on behalf of McFlow to Henchmen as part of the Tax Credit Loan. This represented 11.675% of the total Tax Credit Loan.

38.      The terms and conditions of both the McFlow Tax Credit Term Sheet and the McFlow Tax Credit Participation Agreement are similar to the Term Sheets and Participation Agreements for the Gap Loan, except for the amount of the Tax Credit Loan, the amount of McFlow's investment, the interest rate, the priority of security to be taken by the tax credit lenders in the tax credit proceeds and the *pro rata* and *pari passu* sharing of such proceeds with a bank lender and the maturity date.  Interest is payable at the rate of 10% *per annum* compounded

annually.   The Tax Credit Loan matured on or about October 27, 2016, 15 months from the
initial distribution of the Tax Credit Loan.  Henchman has not repaid the Tax Credit Loan which
is past due and payable along with the interest provided for in the McFlow Tax Credit Term
Sheet.

## MANAGEMENT SERVICES AGREEMENTS

39.         At the time of entering into the lending agreements and participation agreements
for the Gap Loan and Tax Credit Loan described above, each of Colonia, JAAM and Corinthian
entered into Management Services Agreements with Henchmen, Creative Wealth and Bron
Studios.  Pursuant to these agreements, Henchmen and Bron Studios were to pay a management
fee and executive producer fee to each of Colonia, JAAM and Corinthian.  Creative Wealth was
to pay a percentage of the adjusted gross receipts to Colonia, JAAM and Corinthian.

40.         The date of the first Management Services Agreements entered into by JAAM and
Corinthian was February 6, 2015.  Under these agreements Henchmen and Bron Studios agreed
to pay management and executive producer fees of $66,000 to each of JAAM and Corinthian on
or before February 6, 2017.  In addition, Creative Wealth agreed to pay each of Corinthian and
JAAM 7.3% of the adjusted gross receipts from the Picture.

41.         Henchmen, Creative Wealth and Bron Studios have not paid the amount owing
under these Management Services Agreements nor has Creative Wealth provided an accounting
and payment of Corinthian's and JAAM's shares of Creative Wealth's share of the adjusted
gross receipts.

42.          The date of the second Management Services Agreements entered into by JAAM and Colonia was May 8, 2015.  Under these agreements Henchmen and Bron Studios agreed to pay management and executive producer fees of $72,000 to each of JAAM and Colonia on or before May 8, 2017.  In addition, Creative Wealth agreed to pay each of Colonia and JAAM 7.65% of Creative Wealth's 25% of Henchmen's Adjusted Gross Receipts.

43.          Henchmen, Creative Wealth and Bron Studios have not paid the amounts due and owing under these Management Services Agreements nor has Creative Wealth provided an accounting and payment of Colonia's and JAAM's shares of Creative Wealth's share of the adjusted gross receipts.

## BREACH OF TRUST AND BREACH OF CONTRACT BY CREATIVE WEALTH AND JASON CLOTH

44.          The Lending Agreements and Participation Agreements entered into by the Plaintiffs or their assignors with Creative Wealth and described above are collectively referred to as the "**Loan Agreements**" and are listed in Schedule "A" attached hereto.  Creative Wealth has breached the Loan Agreements by failing to properly secure the amounts owing to the Plaintiffs against the refundable tax credit proceeds received by or to the account of Henchmen, the revenues of the Picture to or for the account of Henchmen and other assets of Henchmen.

45.          Creative Wealth has also breached the Loan Agreements as follows:

(a)     Creative Wealth has refused to provide to the Plaintiffs copies of all documents requested;

(b)     Creative Wealth has failed to collect or pay out the amounts owing under the Term Sheets;

(c)     Creative Wealth failed to obtain guarantees of the Gap Loans and Tax Credit Loans;

(d)     Creative Wealth failed to complete a collection account management agreement as a closing condition of the loans to Henchmen;

(e)     Creative Wealth failed to provide for holdback of interest reserves to fund projected interest to maturity on its loans to Henchmen or, if these reserves were provided for, Creative Wealth has failed to pay this interest to the Plaintiffs at maturity;

(f)     Creative Wealth increased the Gap Loan to $10 million without authorization from the Plaintiffs, thereby impairing the Plaintiffs' priority for repayment and diluting their share of Net Profits and Adjusted Gross Receipts;

(g)     Creative Wealth failed to obtain a subordination agreement from the guilds or to make provision for a reserve or set-aside sufficient to pay anticipated guild residuals on the Picture's projected gross receipts sufficient to preserve the Plaintiffs' first ranking priority collateral in Henchmen's receipts until repayment of the loan and all interest at maturity;

(h)     Creative Wealth has failed to account to the Plaintiffs the gross receipts of the Picture or tax credit receipts by or to the account of Henchmen; and

(i)     Creative Wealth deliberately withheld or delayed material disclosure to the Plaintiffs of adverse events concerning the production of the Picture that affected the risks to the collateral of the Plaintiffs, including the termination of the

Picture's director, the loss of a material distribution agreement with Universal, and the costs of the Picture exceeding its budget and scheduled completion date.

46.     As a trustee under the Loan Agreements, Creative Wealth owed a fiduciary duty to the Plaintiffs to ensure that the Plaintiffs' investments were properly secured, all financing documents were properly entered into and revenues for the Picture were properly collected and distributed to the Plaintiffs. All of the actions of Creative Wealth set out in paragraphs 44 and 45 above amount to a breach of Creative Wealth's fiduciary duty.

47.     Furthermore, the breaches of the Loan Agreements set out above were intentional on the part of Creative Wealth or the result of Creative Wealth's gross misconduct.

48.     Cloth, as the directing mind of Creative Wealth, also owed a fiduciary duty to the Plaintiffs. Cloth knew or ought to have known of the above breaches of contract and fiduciary duties of Creative Wealth to the Plaintiffs and participated in them. He was at all material times the directing mind of Creative Wealth, and he benefited personally from the funding of the production of the Picture since the loan transaction fee was paid to him or to his related companies and he also benefited personally from other fees paid to him or to his related companies from the budget of the Picture, funded by the Plaintiffs' financing. Cloth put his own interests ahead of the Plaintiffs' interests, thereby breaching his fiduciary duty to the Plaintiffs.

49.     As a result of Creative Wealth's and Cloth's breaches of trust and breaches of contract, the Plaintiffs have not been repaid the amounts due and owing by Henchmen under the two Gap Loans, Tax Credit Loans and Management Services Agreements. The total amounts owing to the Plaintiffs is $4,576,000 plus interest as provided for in the Loan Agreements and Management Services Agreements.

## MISREPRESENTATION BY CLOTH AND CREATIVE WEALTH

50.        The representations made by Cloth and Creative Wealth set out in paragraphs 11, 12 and 17 were relied upon by the Plaintiffs when they decided to invest in the Picture. The representations were false since the Picture was not sold to Universal and in fact has not yet been sold other than in Canada.   Furthermore, the Picture was not a "sure thing" and there are no guarantees of the Plaintiffs' investments.

51.        The Defendants misrepresented to the Plaintiffs the creative talent that had been contractually attached to the Picture, including Will Ferrell, Gerard Butler and Michael Cera.

52.        The Defendants misrepresented the investment by Telefilm Canada, which was $3 million rather than $4 million.   The Plaintiffs' investments were represented to be in priority to Telefilm Canada's investment.   In fact, they were not.

53.        The Defendants misrepresented that the Royal Bank of Canada would participate in the Tax Credit Loan as an investor when in fact there was no such agreement with the Royal Bank of Canada at the time the Plaintiffs decided to invest in the Picture.

54.        If the Plaintiffs had known the representations were not true, they would not have invested in the Picture.   Because of these misrepresentations, the Plaintiffs' investments were much riskier than had been represented.

55.        The Plaintiffs plead and rely on all of the provisions of the Term Sheets, Participation Agreements and Management Services Agreements.

56.        The Plaintiffs propose that this action be tried at the City of Toronto.

57.        The Term Sheets, Participation Agreements and Management Services Agreements were all entered into in Ontario and were breached in Ontario.

58.        The Plaintiffs rely on Rule 17.02(f) for service of this Statement of Claim on Bron Studios and Henchmen outside of Ontario.

Date:  September 27, 2018

**WeirFoulds LLP**
Barristers & Solicitors
66 Wellington Street West, Suite 4100
P.O. Box 35, Toronto-Dominion Centre
Toronto, Ontario
M5K 1B7

**W.A. Derry Millar**    (LSO #13976W)
dmillar@weirfoulds.com

**John M. Buhlman**    (LSO #20868E)
jbuhlman@weirfoulds.com

Tel:  416-365-1110
Fax:  416-365-1876

**Lawyers for the Plaintiffs**

## SCHEDULE "A"

### HENCHMEN LOAN AGREEMENTS AND
### MANAGEMENT SERVICES AGREEMENTS

| TITLE | DATE | MATURITY | AMOUNT |
|---|---|---|---|
| 1ST JAAM Gap Loan | February 6, 2015 | February 6, 2017 | $   550,000 |
| 1st JAAM Management Services Agreement | February 6, 2015 | February 6, 2017 | $     66,000 |
| 1st Colonia Gap Loan | February 6, 2015 | February 6, 2017 | $   550,000 |
| 1st Colonia Management Services Agreement | February 6, 2015 | February 6, 2017 | $     66,000 |
| 2nd JAAM Gap Loan | May 8, 2015 | May 8, 2017 | $   600,000 |
| 2nd JAAM Management Services Agreement | May 8, 2015 | May 8, 2017 | $     72,000 |
| 2nd Colonia Gap Loan | May 8, 2015 | May 8, 2017 | $   600,000 |
| 2nd Colonia Management Services Agreement | May 8, 2015 | May 8, 2017 | $     72,000 |
| JAAM Tax Credit Loan | July 27, 2015 | October 27, 2016 | $1,000,000 |
| McFlow Tax Credit Loan | July 27, 2015 | October 27, 2016 | $1,000,000 |

**PREMIUM PROPERTIES LIMITED et al.**          - and -    **CREATIVE WEALTH MEDIA FINANCE CORP. et al.**

Plaintiffs                                                  Defendants

*CN-18-00605972-0000*

Court File No.

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

Proceeding commenced at TORONTO

---

## STATEMENT OF CLAIM

---

### WeirFoulds LLP
Barristers & Solicitors
66 Wellington Street West, Suite 4100
Toronto-Dominion Centre, P.O. Box 35
Toronto, ON   M5K 1B7

**W.A. Derry Millar**
(LSO #13976W)
dmillar@weirfoulds.com

**John M. Buhlman**
(LSO #20868E)
jbuhlman@weirfoulds.com

Tel:    416-365-1110
Fax:    416-365-1876

**Lawyers for the Plaintiffs**

12129843