UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BAYSHORE CAPITAL ADVISORS, LLC, BCA :
ALTERNATIVE INCOME FUND, LP, and :
ROCKING T RANCH, LLLP, :
                                             Case No. 1:22-cv-1105-KMK

                Plaintiffs, :
                            :
                v. :

CREATIVE WEALTH MEDIA FINANCE CORP., :
BRON CREATIVE CORP., BRON CREATIVE USA :
CORP., BRON STUDIOS, INC., BRON STUDIOS :
USA, INC., HUDSON VALLEY WEALTH :
MANAGEMENT, INC., JASON CLOTH, AARON L. :
GILBERT, CHRISTOPHER CONOVER, DAVID K. :
JONAS, and DOES 1-21, :
                            :
                Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS CREATIVE WEALTH MEDIA FINANCE CORP., BRON CREATIVE CORP., BRON CREATIVE USA, CORP., AND JASON CLOTH'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

HERRICK, FEINSTEIN LLP
William R. Fried, Esq.
Samuel J. Bazian, Esq.
Daniel A. Field, Esq.
2 Park Avenue
New York, New York 10016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ........................................................................ 3

    A.    Plaintiffs Enter into an Agreement with Hudson to Find
           Investment Opportunities ......................................................................... 3

    B.    Plaintiffs Enter into Three Film Financing Agreements with
           the Creative Defendants ........................................................................... 5

ARGUMENT ................................................................................................................... 6

POINT I      THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL
              JURISDICTION ......................................................................................... 6

    A.    There is No General or Specific Jurisdiction Over the Creative
           Defendants ................................................................................................ 6

    B.    There is No Agency Jurisdiction Over the Creative Defendants
           Through Hudson ........................................................................................ 9

    C.    Plaintiffs Cannot Rely on RICO's National Jurisdiction Provision................... 12

POINT II     IN THE ALTERNATIVE, THE FAC SHOULD BE DISMISSED
              UNDER THE DOCTRINE OF FORUM NON CONVENIENS ...................... 13

    A.    Plaintiffs' Choice of Forum Should Be Accorded Minimal Deference.............. 14

    B.    Canada Provides an Adequate Alternative Forum to Adjudicate
           Plaintiffs' Claims ................................................................................... 16

    C.    Private and Public Interest Factors Weigh in Favor of Dismissal ...................... 17

    D.    The Claims Against the Creative Defendants Should Be Severed ...................... 18

POINT III    SEVERAL OF THE FAC'S CAUSES OF ACTION FAIL TO
              STATE A CLAIM .................................................................................... 20

    A.    Plaintiffs' First Cause of Action for Civil RICO Violations Fails...................... 20

        I.      Plaintiffs Have Not Sufficiently Alleged an Enterprise........................... 21

        II.    Plaintiffs Cannot Establish a "Pattern" of Racketeering Activity .......... 22

i

a.   The FAC Fails to Allege Two or More Predicate Acts Against Bron Creative, Bron Creative USA or Cloth..............23

b.   Plaintiffs Fail to Allege Sufficient Continuity to Support a RICO Claim............................................................ 25

i.   *Plaintiffs Cannot Establish Closed-Ended Continuity*............................................................ 26

ii.   *Plaintiffs Cannot Establish Open-Ended Continuity*............................................................ 28

B.   Plaintiffs' Second Cause of Action for RICO Conspiracy Necessarily Fails..... 30

C.   Plaintiffs' Fraud Claim (3rd Cause of Action) Fails to State a Claim ............... 31

D.   Plaintiffs' Causes of Action for Breach of the Covenant of Good Faith and Fair Dealing (8th through 10th), Unjust Enrichment (13th) and an Accounting (14th) Should be Dismissed ............................................................ 33

CONCLUSION.................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Federal Cases</u>

*Abbott Labs. v. Adelphia Supply USA,*
15-CV-5826(CBA) (LB), 2017 WL 57802 (E.D.N.Y. 2017)................................22

*Abdullahi v. Pfizer, Inc.,*
562 F.3d 163 (2d Cir. 2009).................................................................17

*Anatian v. Coutts Bank (Switzerland) Ltd.,*
193 F.3d 85 (2d Cir. 1999)...................................................................21

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.,*
921 F. Supp. 2d 56 (S.D.N.Y. 2013)........................................................6

*Barron Partners, LP v. Lab123, Inc.,*
No. 07 CIV. 11135 (JSR), 2008 WL 2902187 (S.D.N.Y. 2008)..........................9

*Brown v. Lockheed Martin Corp.,*
814 F.3d 619 (2d Cir. 2016)...................................................................7

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
69 F. Supp. 3d 342 (S.D.N.Y. 2014)........................................................12

*Capital Currency Exch., N.V., v. Nat'l Westminster Bank PLC,*
155 F.3d 603 (2d Cir. 1998)...................................................................17

*CCS Int'l., v. ECI Telesystems,*
1998 WL 512951 (S.D.N.Y. 1998)..........................................................18

*Daimler AG v. Bauman,*
571 U.S. 117 (2014)...........................................................................7

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)..................................................................21

*DeLorenzo v. Viceroy Hotel Grp., LLC,*
757 F. App'x 6 (2d Cir. 2018) ...............................................................8

*DISH Network L.L.C. v. Kaczmarek,*
19-CV-4803-EK-SJB, 2021 WL 4483470 (E.D.N.Y.), *adopting report &*
*recommendation as modified,* 2021 WL 4485870 (E.D.N.Y. 2021) ......................9

*Doe v. Hyland Therapeutics Div.,*
807 F. Supp. 1117 (S.D.N.Y. 1992).........................................................18

*Elsevier, Inc. v. Grossman*,
  77 F. Supp. 3d 331 (S.D.N.Y. 2015)................................................................12

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*,
  806 F. Supp. 2d 712 (S.D.N.Y. 2011)............................................................14

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MC-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. 2016)........................21

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
  67 F.3d 463 (2d Cir. 1995)............................................................................22

*Glob. Plantation Inv.--Deep Creek, LLC v. Yin Xia*,
  No. 17-CV-4294C-BAST, 2019 WL 2436278, at *4 (E.D.N.Y.),
  *adopting in part report & recommendation*, 2019 WL 1284811
  (E.D.N.Y. 2019)............................................................................................11

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000)............................................................20

*Grgurev v. Licul*,
  229 F. Supp. 3d 267 (S.D.N.Y. 2017)............................................................35

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)............................................................28

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)................................................................................17, 18

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)......................................................................................26

*Hadami, S.A. v. Xerox Corp.*,
  272 F. Supp. 3d 587 (S.D.N.Y. 2017)............................................................33

*Hoatson v. N.Y. Archdiocese*,
  No. 05 CIV 10467 PAC, 2007 WL 431098 (S.D.N.Y. 2007),
  *aff'd*, 280 F. App'x 88 (2d Cir. 2008)............................................................23

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*,
  665 F. Supp. 2d 239 (S.D.N.Y. 2009)..............................................27, 29, 30

*Hutton v. Priddy's Auction Galleries, Inc.*,
  275 F. Supp. 2d 428 (S.D.N.Y. 2003)..............................................................6

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001)......................................................................14, 15

iv

*Ixotic AG v. Kammer*,
    No. 09-CV-4345 NGJO, 2015 WL 270028 (E.D.N.Y. 2015) .................................29

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
    30 F. Supp. 2d 626 (S.D.N.Y. 1998).................................................................22

*Kades v. Organic Inc.*,
    No. 00-Civ-3671 (LTS(RLE), 2003 WL 470331 (S.D.N.Y. 2003).......................30

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)................20

*Kee v. Nat'l Rsrv. Life Ins. Co.*,
    918 F.2d 1538 (11th Cir. 1990) ......................................................................35

*Lana Int'l Ltd. v. Boeing Co.*,
    No. 93 Civ 7169, 1995 WL 144152 (S.D.N.Y. 1995) .........................................16

*Landau v. New Horizon Partners, Inc.*,
    No. 02 CIV.6802 JGK, 2003 WL 22097989 (S.D.N.Y. 2003).............................11

*Lefkowitz v. Reissman*,
    No. 12 CIV. 8703 RA, 2014 WL 925410 (S.D.N.Y. 2014) ...........................28, 29

*Liaros v. Vaillant*,
    No. 93 CIV. 2170 (CSH), 1996 WL 88559 (S.D.N.Y. 1996) .................................8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..........................................................................6, 7

*Mills v. Polar Molecular Corp.*,
    Nos. 91 Civ 0249 (RWS), 91 Civ 0902 (RWS), 1992 WL 309592 (S.D.N.Y. 1992) ...........24

*Monegasque de Reassurances S.A.M. (Monde re) v. NAK Naftogaz of Ukraine*,
    158 F. Supp. 2d 377 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002) ............16

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)...........................................................................23

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)..........................................................20, 31

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010).............................................................................6

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................21

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
    929 F. Supp. 117 (S.D.N.Y. 1996) .........................................................................32

*Rudersdal v. Harris*,
    No. 1:18-CV-11072-GHW, 2022 WL 263568 (S.D.N.Y. 2022).........................18, 19

*Rudersdal, EOOD v. Harris*,
    No. 18CIV11072GHWRWL, 2020 WL 9815180 (S.D.N.Y.),
    *report & recommendation adopted in part, rejected in part sub nom.*,
    2020 WL 5836517 (S.D.N.Y. 2020).......................................................................15

*Schlaifer Nance & Co. v. Est. of Warhol*,
    119 F.3d 91 (2d Cir. 1997)......................................................................................25

*Sempra Energy Trading Corp. v. Algoma Steel, Inc.*,
    No. 00 Civ 9227, 2001 WL 282684 (S.D.N.Y. 2001),
    *aff'd*, 300 F.3d 242 (2d Cir. 2022).........................................................................16

*Skylon Corp. v. Guilford Mills, Inc.*,
    No. 93 CIV. 5581 LAP, 1997 WL 88894 (S.D.N.Y. 1997) .....................................29

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008).....................................................................................25

*Stanley v. OptumInsight, Inc.*,
    No. 1:13-CV-00944, 2014 WL 906145 (N.D.N.Y. 2014)........................................32

*Strategic Value Master Fund v. Cargill Fin. Servs.*,
    421 F. Supp. 2d 741 (S.D.N.Y. 2006)......................................................................17

*Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*,
    No. 20 CIV. 1436 (ER), 2021 WL 1145245 (S.D.N.Y. 2021) ...............................24

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010).......................................................................8

*Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.*,
    891 F. Supp. 113 (S.D.N.Y. 1994), *aff'd*, 59 F.3d 20 (2d Cir. 1995).........25, 29, 30

*Toronto Stock Exch. v. Quotron Syst. Inc.*,
    No. 91 Civ. 5045, 1992 WL 116636 (S.D.N.Y.),
    *aff'd*, 986 F.2d 499 (2d Cir. 1992).........................................................................16

*Transunion Corp. v. PepsiCo, Inc.*,
    811 F.2d 127 (2d Cir. 1987).....................................................................................17

*U.S. v. Persico,*
    832 F.2d 705 (2d Cir. 1987)................................................................21

*Valenti v. Penn Mut. Life Ins. Co.,*
    850 F. Supp. 2d 445 (S.D.N.Y. 2012),
    *aff'd,* 511 F. App'x 57 (2d Cir. 2013)....................................................31

*Vicon Fiber Optics Corp. v. Scrivo,*
    201 F. Supp. 2d 216 (S.D.N.Y. 2002).....................................................27

*VictoriaTea.com, Inc. v. Cott Beverages, Canada,*
    239 F. Supp. 2d 377 (S.D.N.Y. 2003).....................................................16

*W.E. Darin Constr. Enters., Inc. v. Detroit Coke Co.,*
    814 F. Supp. 325 (W.D.N.Y. 1993).........................................................25

*Wade Park Land Holdings, LLC v. Kalikow,*
    21-cv-1657(LJL), 2022 WL 657664 (S.D.N.Y.),
    *amending,* 2022 WL 2479110 (S.D.N.Y. 2022)..........................22, 26, 27

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.,*
    No. 13-CV-9239 (CS), 2017 WL 972117 (S.D.N.Y. 2017),
    *aff'd,* 712 F. App'x 88 (2d Cir. 2018)................................................18, 19

*Westchester Cty. Indep. Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015)..................................................27, 30

*Wild Bunch, SA v. Vendian Ent., LLC,*
    256 F. Supp. 3d 497 (S.D.N.Y. 2017).....................................................32

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007),
    *aff'd,* 328 F. App'x 695 (2d Cir. 2009)...................................................23

*Worldwide Futgol Assocs., Inc. v. Event Ent., Inc.,*
    983 F. Supp. 173 (E.D.N.Y. 1997) ....................................................10, 11

### State Cases

*Am./Int'l 1994 Venture v. Mau,*
    146 A.D.3d 40, 42 N.Y.S.3d 188 (2d Dep't 2016) ..................................9

*Doral Collision Ctr., Inc. v. Daimler Tr.,*
    341 So. 3d 424 (Fla. Dist. Ct. App. 2022) ............................................34

*Island Travel & Tours, Co. v. MYR Indep., Inc.,*
    300 So. 3d 1236 (Fla. Dist. Ct. App. 2020) ..........................................32

*Manas v. VMS Assocs., LLC,*
    53 A.D.3d 451, 863 N.Y.S.2d 4 (1st Dep't 2008) ...................................31

*New York Univ. v. Cont'l Ins. Co.,*
    87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ............................................34

*Sabetay v. Sterling Drug, Inc.,*
    69 N.Y.2d 329, 514 N.Y.S.2d 209 (1987) ............................................33

*Word of God Fellowship, Inc. v. Vimeo, Inc.,*
    205 A.D.3d 23, 166 N.Y.S.3d 3 (1st Dep't 2022) ..................................34

## Canadian Cases

*1001411 Ontario Ltd. v. City of Toronto Economic Dev. Corp.,*
    2012 ONSC 5429, 2012 CarswellOnt 11813, at ¶ 8 (Can. Sup. Ct. Justice 2012) .................33

*Thunder Bay Masonic Found. v. Sovereign Gen. Ins. Co.,*
    2014 ONSC 4142, 2014 CarswellOnt 10748, at ¶ 25 (Can. Sup. Ct. Justice 2012) ...............34

## Statutes

18 U.S.C. § 1962(c) ............................................................................21

18 U.S.C. § 1965 ...............................................................................12

18 U.S.C. § 1965(a) ...........................................................................12

18 U.S.C. § 1965(b) ......................................................................12, 13

CPLR § 302 .......................................................................................7

CPLR § 302(a)(1) ..................................................................7, 9, 10, 11

CPLR § 302(a)(2) .............................................................................7, 8

CPLR § 302(a)(3) .............................................................................7, 8

FRCP 9(b) ................................................................................. passim

FRCP 12(b)(2) ................................................................................1, 6

FRCP 12(b)(6) ....................................................................................1

Defendants Creative Wealth Media Finance Corp. ("Creative Wealth"), Bron Creative Corp. ("Bron Creative"), Bron Creative USA, Corp. ("Bron Creative USA"), and Jason Cloth ("Cloth" and collectively, the "Creative Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the First Amended Complaint (the "FAC") filed by Plaintiffs Bayshore Capital Advisors, LLC ("Bayshore"), BCA Alternative Income Fund, LP, ("BCA") and Rocking T Ranch, LLLP ("RTR" and collectively with Bayshore, "Plaintiffs") (i) for lack of personal jurisdiction pursuant to FRCP 12(b)(2) and, in the alternative, based upon *forum non conveniens*; and (ii) for failure to state a claim pursuant to FRCP 12(b)(6).

## PRELIMINARY STATEMENT

Stripped of hyperbole, this case is nothing more than a run-of-the-mill contract dispute brought by two entities who claim they are owed funds. From July to October 2018, Bayshore, a Florida-based investment advisor, entered into three agreements with certain of the Creative Defendants and others—established film financiers in Canada and California—to participate in the financing of films. Bayshore's client, RTR, which is also based in Florida, participated in two of the deals.

When the films Plaintiffs financed did not perform as expected and Plaintiffs received only a partial return of their funds, Plaintiffs filed the instant action, claiming they are victims of a RICO conspiracy between the entity which sourced the deal for them (Hudson), the Creative Defendants, and other defendants herein. In their 57-page First Amended Complaint, Plaintiffs assert a variety of claims against the Creative Defendants, including for alleged violations of the civil RICO statute, fraudulent inducement, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment and an accounting.

1

The First Amended Complaint should be dismissed with prejudice for several reasons. First, there is no personal jurisdiction over the Creative Defendants. There is no general jurisdiction over them, as they are neither incorporated in nor maintain their principal places of business in New York, and there is no basis for long-arm jurisdiction over them either, since they did not commit any torts or transact any business in New York relevant to Plaintiffs' claims.

Second, even if there were jurisdiction over the Creative Defendants, there is no reason for Plaintiffs' action against the Creative Defendants to be heard in this forum, since it involves claims between out-of-state parties concerning agreements (two of which contain forum selection clauses in favor of Canada) that were executed and performed outside of New York. Thus, at the very least, the claims against the Creative Defendants should severed and dismissed from this action under the doctrine of *forum non conveniens.*

Third, several of Plaintiffs' causes of action fail to state a claim. Their first and second causes of action under the RICO statute must be dismissed for failing to sufficiently allege that the Creative Defendants did anything on behalf of any purported "enterprise," as opposed to simply conducting their own businesses. Moreover, while Plaintiffs attempt to cast this garden-variety business dispute as a complex "scheme" to defraud investors, at best, Plaintiffs allege only a single purported scheme involving a limited number of participants against two purported victims, which allegedly occurred over a limited period of time. As such, they have not alleged that any of the Creative Defendants engaged in a "pattern" of racketeering activity.

Plaintiffs' causes of action for fraud, breach of the covenant of good faith and fair dealing and unjust enrichment also fail to state a claim, as they seek the same damages as in the contract claims, and they all assert that the Creative Defendants are liable for failing to pay amounts due under the subject agreements. Such claims are therefore duplicative of Plaintiffs' breach of

contract claims and should be dismissed. Plaintiffs' fraud claim additionally fails against Bron Creative, Bron Creative USA and Cloth, as Plaintiffs do not allege that Bron Creative and Bron Creative USA made any misrepresentations, and Cloth's alleged misrepresentations were mere "assurances" of repayment, which do not amount to actionable fraud.

Finally, Plaintiffs' accounting claim fails because the relevant agreements between the parties do not create a fiduciary relationship between them—a prerequisite for seeking an accounting—and parties may not seek an accounting where they have an adequate remedy law. Plaintiffs' remedy is through their claims for breach of contract, and the accounting claim should therefore be dismissed.

## ALLEGATIONS OF THE COMPLAINT[1]

The facts relevant to this motion are derived from the First Amended Complaint,[2] as well as the statements in and documents appended to the Declaration of Jason Cloth, sworn to on August 25, 2022 and filed simultaneously herewith ("Cloth Decl."). The facts relevant to this motion to dismiss may be summarized as follows:

A. Plaintiffs Enter into an Agreement with Hudson to Find Investment Opportunities

Bayshore, a Florida limited liability company with its principal place of business in Florida, is a sophisticated registered investment advisor which also makes its own investments through special purpose entities, such as BCA, which is a Delaware limited partnership with its principal place of business in Florida. FAC ¶¶ 10, 12. Bayshore, which has invested over $350 million dollars in private capital since 2014, touts on its website that "curiosity drives our thinking" and

---

[1] Although Plaintiffs' factual allegations are accepted as true at this stage of proceedings, the Creative Defendants reserve the right to dispute them in the event that the instant motion is not granted.

[2] A copy of the First Amended Complaint is annexed as Exhibit A to the Declaration of William R. Fried, filed simultaneously herewith.

"diligence drives our decisions."[3]  RTR, a client of Bayshore, is a Florida limited liability limited partnership with its principal place of business in Florida.  *Id.* ¶ 15.

Plaintiffs allege that, sometime in 2016, Bayshore was introduced to defendant Hudson Wealth Valley Management, Inc. ("Hudson"), which is a New York investment advisor that has access to investment opportunities in the film and television industry.  FAC ¶ 50.  Plaintiffs claim that from the beginning of Bayshore's relationship with Hudson, Hudson attempted to lure Bayshore into Hudson's investment fund by misrepresenting the stability and risk of the film investment opportunities.  Specifically, Plaintiffs claim that Hudson represented that the investments were backed by payment agreements or transferrable tax credits, and that the success of the investments did not depend upon box office success.  FAC ¶¶ 51-55.  Bayshore, however, ultimately decided not to invest in Hudson's fund.  *Id.* ¶ 57.

About a year later, in August 2017, Hudson introduced Bayshore to CWMF in connection with a new film financing opportunity, which Bayshore concedes it did not participate in.  *Id.* ¶¶ 59, 73.  Nevertheless, Bayshore claims that in connection with that financing opportunity, Hudson provided documents and a spreadsheet prepared by CWMF which misrepresented the success of its prior financings.  *Id.* ¶¶ 60-70.  Plaintiffs also claim that CWMF misrepresented on its website that repayment of CWMF's financings were not dependent on box office success.  *Id.* ¶¶ 62-64.

Although Plaintiffs allege that Hudson contacted Bayshore in October 2017, February 2018, and May 2018 to provide it with information concerning Hudson's investments and Bron Studios' participation in the film projects, Plaintiffs do not allege that Hudson – let alone the Creative Defendants – made any misrepresentations in such communications.  *Id.* ¶¶ 74-76.

---

[3] *See* https://bayshorecap.com/

4

Plaintiffs next allege that Hudson (not the Creative Defendants) misrepresented the nature of a nearly $18 million loan that CWMF made to Hudson which would be paid off through commissions that Hudson earned on each loan that Hudson sourced for CWMF. *Id.* ¶¶ 83-86. Significantly, Plaintiffs do not allege that any of the Creative Defendants made or had anything at all to do with such an alleged misrepresentation.

On or about June 29, 2018, Bayshore and Hudson entered into a Sourcing Agreement pursuant to which Bayshore committed to invest $8 million in film loans "sourced by Hudson that meet [Bayshore's] predefined loan criteria." *Id.* ¶ 89. The Sourcing Agreement provides that Bayshore retained the discretion to participate in deals meeting several criteria, including that the opportunity be "sourced by Hudson via its relationship with [CWMF]" and that the film be "[p]roduced or co-produced by BRON Studios USA Inc." *Id.* ¶ 90. In other words, Bayshore set the terms of the deals that it would consider and, critically, had the right to reject any opportunity that did not meet its standards.

B. Plaintiffs Enter into Three Film Financing Agreements with the Creative Defendants

Hudson sourced three deals relevant to Plaintiffs' complaint, each of which was memorialized by a financing "term sheet" between one or more of the Creative Defendants, on the one hand, and BCA and/or RTR, on the other (the "Term Sheets").

The first was for the financing of a film called "Needle in a Timestack" ("Needle") which BCA entered into with CWMF and Bron Studios USA on or about July 5, 2018. *Id.* ¶ 104; Cloth Decl., Ex. A. RTR did not finance that film. The second was for the financing of a slate of films produced by Lionsgate Films, Inc. (the "Lionsgate Films"). BCA and RTR each entered into term sheets with Bron Creative USA, Bron Studios USA, and CWMF dated August 1, 2018. FAC ¶¶ 138-142; Cloth Decl., Exs. B, C. The third and final financing was for a film called "The

Nightingale" where BCA and RTR each entered into term sheets with Bron Creative dated October 17, 2018. FAC ¶¶ 172, 178; Cloth Decl. ¶ 10.[4]

Plaintiffs do not allege that the Creative Defendants made any misrepresentations in connection with the negotiation or entry into any of the Term Sheets. They instead claim that the Creative Defendants failed to disclose a brewing disagreement with third-party investors in the Nightingale and that, after Plaintiffs funded the deals and the films were produced, Cloth falsely assured Bayshore that the films were performing well and that Plaintiffs would be repaid the entirety of their investments. Plaintiffs' claim, however, that these investments were only partially repaid. *See* FAC ¶¶ 120-31, 147-52, 157-58, 183-96.

## ARGUMENT

### POINT I

### THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Fed. R. Civ. P. 12(b)(2) requires dismissal when a court lacks personal jurisdiction over a defendant. *See Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 435 (S.D.N.Y. 2003). It is Plaintiffs' burden to demonstrate personal jurisdiction. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).

A. There is No General or Specific Jurisdiction Over the Creative Defendants

This Court should dismiss the FAC for lack of personal jurisdiction over the Creative Defendants. It is axiomatic that this Court may only exercise personal jurisdiction to the extent permitted by New York's long arm statute and the requirements of due process. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Two theories of personal

---

[4] The Term Sheets are all properly before the Court at this stage, because Plaintiffs rely on them and they are "integral" to Plaintiffs' claims. *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 (S.D.N.Y. 2013).

jurisdiction may satisfy due process and permit this Court to exercise personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* at 567-68. Here, neither applies.

First, a corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction, and courts outside of a corporation's place of incorporation or principal place of business may only exercise general jurisdiction in "exceptional cases." *Daimler AG v. Bauman*, 571 U.S. 117, 126, 136 (2014); *Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 629 (2d Cir. 2016) (stating that where "a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"). Here, this Court lacks general jurisdiction over the Creative Defendants because, as Plaintiffs allege, Creative Wealth and Bron Creative are Canadian corporations with their principal places of business in Canada, Cloth resides in Canada, and Bron Creative USA is a Nevada corporation with its principal place of business in California. FAC ¶¶ 21, 24, 26, 32-33; Cloth Decl. ¶¶ 2-5. Nor can Plaintiffs establish that, despite these facts, this is one of the "exceptional cases" in which the Court may exercise general jurisdiction over the Creative Defendants.

Second, New York's long arm statute, CPLR § 302, allows specific jurisdiction over a non-domiciliary only where it or its agent: (1) "transacts any business within the state" and the cause of action "arises from" that business activity (*see* CPLR § 302(a)(1)); (2) "commits a tortious act within the state" and the cause of action arises from that tortious conduct (*see* CPLR § 302(a)(2)); or (3) commits a tortious act outside of the state which causes injury within the state. *See* CPLR § 302(a)(3). Plaintiffs do not identify which provision of New York's long-arm statute they believe apply to the Creative Defendants. None of them do.

As a threshold matter, Plaintiffs do not allege that the Creative Defendants (or any

defendant) caused any alleged injury *in* New York, as Plaintiffs do not reside in New York or maintain their principal places of business in New York. FAC ¶¶ 10-16. Thus, CPLR § 302(a)(3) cannot apply. Moreover, for a Court to have jurisdiction over a party pursuant to CPLR § 302(a)(2), the defendant must commit a tort while *physically present* in New York. *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 730 (S.D.N.Y. 2010). Because Plaintiffs do not even allege that the Creative Defendants committed a tort while present in New York, CPLR § 302(a)(2) does not apply either.

Similarly, other than the single conclusory allegation that "many of the transactions and occurrences out of which these claims arise transpired within the State of New York," (FAC ¶ 40), the FAC is utterly devoid of any allegations that the Creative Defendants conducted any business in New York relevant to Plaintiffs' claims. Plaintiffs' allegations are therefore plainly insufficient to make a *prima facie* showing of jurisdiction. *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) ("[C]onclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a prima facie showing of jurisdiction.") (internal quotes omitted); *Liaros v. Vaillant*, No. 93 CIV. 2170 (CSH), 1996 WL 88559, at *5 (S.D.N.Y. 1996) ("[A] conclusory allegation" that defendants transacted business from, through or in connection with the City of New York "cannot suffice to establish personal jurisdiction under section 302(a)(1).").

Tellingly, Plaintiffs do not allege that they had any meetings with the Creative Defendants in New York, executed any of the Term Sheets in New York, or even funded the transactions at issue through New York bank accounts. Nor could they. Plaintiffs operate their businesses in Florida and reside in various states outside of New York, and the Creative Defendants operate their businesses and reside in Canada and California. FAC ¶¶ 10-16; 21, 24, 26, 32-33; Cloth Decl. ¶¶

2-5.  The Creative Defendants, accordingly, did not transact business in New York, and CPLR § 302(a)(1) therefore does not allow for jurisdiction over them.

B.  <u>There is No Agency Jurisdiction Over the Creative Defendants Through Hudson</u>

To the extent Plaintiffs claim that Hudson's alleged email or phone solicitations originating from New York were done in its capacity as the Creative Defendants' "agent" and are sufficient to confer jurisdiction over them, that argument should be rejected for two separate and independent reasons.

<u>First</u>, Plaintiffs fail to sufficiently allege that Hudson was the Creative Defendants' agent. "To be considered an agent for jurisdictional purposes, the local agent must have 'engaged in purposeful activities in [the] State in relation to [a] transaction for the benefit of and with the knowledge and consent of the [defendant] and that [the defendant] exercised some control over [the agent] in the matter.'" *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 54, 42 N.Y.S.3d 188, 198 (2d Dep't 2016).  "The 'element of control' is 'critical.'"  *DISH Network L.L.C. v. Kaczmarek*, 19-CV-4803-EK-SJB, 2021 WL 4483470, at *5 (E.D.N.Y.), *adopting report & recommendation as modified*, 2021 WL 4485870 (E.D.N.Y. 2021) (internal citations omitted).

Thus, "in order to make a *prima facie* showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question . . . Where the plaintiff has made only broadly worded or vague allegations about a defendant's participation in the action allegedly taken in New York, courts have routinely granted motions to dismiss for lack of personal jurisdiction." *Barron Partners, LP v. Lab123, Inc.*, No. 07 CIV. 11135 (JSR), 2008 WL 2902187, at *10 (S.D.N.Y. 2008) (internal citations omitted).

Here, Plaintiffs offer no specific factual allegations supporting an agency theory of jurisdiction. Their only offering in this regard is the conclusory assertion that "Hudson was tasked, under Cloth and Gilbert's direction and control, with convincing lenders like Plaintiffs, through false and misleading statements, to pour millions of dollars into BRON's productions." FAC ¶ 45. Plaintiffs have simply not alleged facts sufficient to demonstrate that Hudson's alleged misrepresentations were directed or controlled by any of the Creative Defendants. *Worldwide Futgol Assocs., Inc. v. Event Ent., Inc.*, 983 F. Supp. 173, 178 (E.D.N.Y. 1997) (stating that although putative New York agent engaged in activities that benefitted the defendant with defendant's knowledge and consent, the agent merely "contacted [the plaintiff] on [the defendant's] behalf and put the parties in contact with each other to negotiate the Agreement directly").

Plaintiffs' own allegations that Bayshore entered into a Sourcing Agreement directly with Hudson, *and that no Creative Defendant was a party thereto*, substantiates that Hudson was acting on its own behalf in its dealings with Bayshore and undercuts any claim that Hudson acted on behalf of—*let alone under the control of*—the Creative Defendants.

Second, even assuming *arguendo* that Hudson was the Creative Defendants' agent for jurisdictional purposes—to be sure, it was not—any few email and phone solicitations that Hudson allegedly made on the Creative Defendants' behalf are insufficient to invoke long-arm jurisdiction under CPLR § 302(a)(1) because they do not constitute transacting business in New York. *Worldwide Futgol*, 983 F. Supp. at 177 ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state."). Indeed, "New York courts have held that even multiple meetings in New York, which were not for the purpose of executing or performing the contract at issue, were

insufficient to confer jurisdiction under Section 302(a)(1) on an out-of-state defendant." *Id.* at 179.

Plaintiffs do not allege that they or the Creative Defendants executed any of the Term Sheets in New York (because they did not), that the Term Sheets provide for any performance in New York (they do not), or that any payments made to or by the Creative Defendants flowed through a New York bank account (they did not). Indeed, Plaintiffs do not allege that the transactions contemplated by the Term Sheets have any connection at all with New York. Where, as here, the "center of gravity" of the business transacted takes place "outside of New York," contacts via telephone and mail are insufficient to invoke jurisdiction under CPLR § 302(a)(1). *Glob. Plantation Inv.--Deep Creek, LLC v. Yin Xia*, No. 17-CV-4294C-BAST, 2019 WL 2436278, at *4 (E.D.N.Y.), *adopting in part report & recommendation*, 2019 WL 1284811 (E.D.N.Y. 2019) (finding no specific jurisdiction over defendant even though plaintiff had a principal place of business and bank account in New York and defendant communicated with plaintiff over email and the phone, reasoning that (i) "Plaintiff is a Florida corporation and the Agreement contains a Florida choice of law clause"; (ii) "The contract was not executed in New York"; and (iii) "there [wa]s no allegation that Defendant's payments under the Agreement needed to be directed to a New York account"); *Landau v. New Horizon Partners, Inc.*, No. 02 CIV.6802 JGK, 2003 WL 22097989, at *5 (S.D.N.Y. 2003) ("[E]ven if the correspondence or phone call was directed towards the plaintiff [in New York], the fact that the ultimate transaction, contract or activity by [defendant] took place outside of New York and was purposefully directed towards Connecticut, the center of gravity of the transactions were outside of New York, and therefore [defendant]'s alleged phone conversations and correspondence could not subject it to jurisdiction under § 302(a)(1).").

Because there is no specific jurisdiction over the Creative Defendants, the FAC should be dismissed as against them.

C. Plaintiffs Cannot Rely on RICO's National Jurisdiction Provision

Plaintiffs may not rely on RICO's national jurisdiction provision, 18 U.S.C. § 1965, to assert jurisdiction over the Creative Defendants. That statute provides that a RICO action may be brought in any district in which at least one defendant "resides, is found, has an agent, or transacts his affairs" and that, where "it is shown that the ends of justice require" it, the Court may exercise personal jurisdiction over "other parties residing in any other district." 18 U.S.C. § 1965(a)-(b). Significantly, "[a] district court relying on § 1965 may only exert this jurisdictional pull over defendants 'residing in any other district,' 18 U.S.C. § 1965(b), *not foreign defendants*." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) (emphasis added).

Thus, CWMF, Bron Creative and Cloth—all of whom are foreign defendants residing in Canada and therefore do *not* reside in any United States district (*see* Cloth Decl. ¶¶ 2-4)—are not subject to personal jurisdiction merely by virtue of the RICO's nationwide jurisdiction provision. Plaintiffs must therefore rely on New York's long-arm statute, which, as discussed above, they cannot satisfy. Accordingly, there is no basis for personal jurisdiction over CWMF, Bron Creative or Cloth, and they should be dismissed from this action.

Moreover, the RICO statute cannot confer nationwide jurisdiction over a defendant when the complaint asserts a faulty RICO claim. As set forth below, Plaintiffs' RICO claims fail as a matter of law. Therefore, Plaintiffs cannot assert personal jurisdiction over Bron Creative USA either, and it should be dismissed from this action. *BWP Media USA Inc. v. Hollywood Fan Sites,*

*LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) ("Plaintiffs cannot rely upon 18 U.S.C. § 1965(b)

to establish personal jurisdiction over each of the defendants if the RICO claim is dismissed.").[5]

## POINT II

### IN THE ALTERNATIVE, THE FAC SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

Even if the Court were to hold that it may exercise personal jurisdiction over the Creative

Defendants—it should not—it should dismiss the action against them under the doctrine of *forum*

*non conveniens*, as the Creative Defendants do not belong in a New York forum. None of the

Creative Defendants reside, operate a place of business, own real estate, maintain a bank account,

or have employees in New York. *See* Cloth Decl. ¶¶ 2-5. Plaintiffs, too, have no connection to

this forum, as they reside outside of New York and operate their businesses in Florida. FAC ¶¶

10-16. Furthermore, the transactions relevant to Plaintiffs' claims against the Creative Defendants

have no connection to New York; there is no allegation that the out-of-state parties executed the

Term Sheets in New York or that the Term Sheets involved the performance of any obligations in

New York.

In fact, the first two of the three sets of Term Sheets at issue—for the Needle and Lionsgate

deals—provide that (i) they are "governed by and interpreted in accordance with the laws of the

Province of Ontario"; and (ii) the parties "irrevocably attorn to the jurisdiction of the courts of the

---

[5] To the extent Plaintiffs claim that there is personal jurisdiction over the Creative Defendants in this action because certain of the "underlying" loan agreements contained New York forum selection clauses, that argument should be rejected outright. FAC ¶ 40. Plaintiffs do not allege they were parties to those independent agreements (because they were not), which have no bearing on this action. As discussed below, none of the agreements between Plaintiffs and the Creative Defendants (i.e., the Term Sheets) contain New York forum selection clauses, and the Needle and Lionsgate Term Sheets contain forum selection clauses pursuant to which Plaintiffs consented to the jurisdiction of courts in Toronto, Canada.

City of Toronto." Cloth Decl., Exs. A-C. None of the Term Sheets chose New York as the forum.[6] Cloth Decl. ¶ 10, Exs. A-C. In sum, New York has no interest in adjudicating a dispute between out-of-state parties concerning out-of-state transactions, and the Creative Defendants should therefore be dismissed from this action under the doctrine of *forum non conveniens*.

When determining whether dismissal is warranted under *forum non conveniens*, courts apply a three-step inquiry. *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011). <u>First</u>, courts determine the degree of deference properly accorded the plaintiff's choice of forum. <u>Second</u>, courts considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. And, <u>third</u>, a court must balance the private and public interests implicated in the choice of forum. *See id.* (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-75 (2d Cir. 2001) (en banc)). Here, all three steps of the inquiry favor the Creative Defendants' severance and dismissal.

A. <u>Plaintiffs' Choice of Forum Should Be Accorded Minimal Deference</u>

When determining the level of deference accorded to Plaintiffs' choice of forum, "a court should compare the lawsuit's bona fide connection to the forum against any indicia that the plaintiff was motivated by forum-shopping." *Erausquin*, 806 F. Supp. 2d at 724. Five factors determine whether a choice of forum was motivated by genuine convenience or forum shopping: "[1] the convenience of the plaintiff's residence in relation to the chosen forum; [2] the availability of witnesses or evidence to the forum district; [3] the defendant's amenability to suit in the forum district; [4] the availability of appropriate legal assistance; and [5] other reasons relating to

---

[6] The Nightingale Term Sheets contain a New York choice of law provision, but no forum selection clause. *See* Cloth Decl. ¶ 10.

14

convenience of expense." *See Iragorri*, 274 F.3d at 72. These factors demonstrate that Plaintiffs' decision to sue in this Court was motivated by forum shopping, not genuine convenience.

Plaintiffs reside outside of New York and maintain their principal places of business in Florida. FAC ¶¶ 10-16. Their decision to file in New York could not have been made because of the Court's proximity to their residences. Moreover, of the 13 parties to this action, only *two* reside in or operate their businesses in New York, Hudson and its president, Conover. Every other party—and, in turn, the witnesses to the relevant events—reside and/or maintain their principal places of business elsewhere.

Aside from Plaintiffs' solitary vague assertion that "a substantial part of the events giving rise to the lawsuit occurred in this district," (*Id.* ¶ 41), Plaintiffs do not identify any reasons for bringing suit against the Creative Defendants in New York rather than Canada, where Plaintiffs and the Creative Defendants are amenable to suit by virtue of their residence and/or the Needle and Lionsgate Term Sheets' forum selection clauses. *See* Cloth Decl., Exs. A-C at 2.

Plaintiffs' apparent reason for suing in this district—as opposed to Canada—is so that it can assert claims under the RICO statute which are unavailable in Canada. *Rudersdal, EOOD v. Harris*, No. 18CIV11072GHWRWL, 2020 WL 9815180, at *29 (S.D.N.Y.), *report & recommendation adopted in part, rejected in part sub nom.*, 2020 WL 5836517 (S.D.N.Y. 2020) ("Plaintiffs' arguments suggest that their choice to bring an action in the United States was motivated at least in part by a desire to bring claims under RICO, which 'bespeak[s] forum shopping rather than genuine convenience for these foreign plaintiffs, defendants, and witnesses.'"). But as set forth below, this is not a legitimate basis to avoid dismissal under the doctrine of *forum non conveniens*, as Canada provides adequate remedies to Plaintiffs. Accordingly, the Court should accord minimal deference to Plaintiffs' choice of forum.

B. Canada Provides an Adequate Alternative Forum to Adjudicate Plaintiffs' Claims

The second step of the *forum non conveniens* inquiry is satisfied through a showing that the moving defendants are amenable to suit in Canada, and that a Canadian forum permits litigation of the subject matter of the dispute. *See VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003). Both requirements are easily satisfied.

With regard to the first requirement, all of the Creative Defendants are amenable to suit in Toronto because they reside there and/or have consented to its jurisdiction in one or more of the Term Sheets at issue in this action. *See* Cloth Decl., Exs. A-C at 2.

With respect to the second requirement, a forum is inadequate only where there is "a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Monegasque de Reassurances S.A.M. (Monde re) v. NAK Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 385 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002). As this Court has already made clear, Canadian courts are more than capable of adjudicating Plaintiffs' claims against the Creative Defendants. *See, e.g., Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00 Civ. 9227, 2001 WL 282684, at *4 (S.D.N.Y. 2001), *aff'd*, 300 F.3d 242 (2d Cir. 2022) (dismissing contract dispute for *forum non conveniens* and stating that "Ontario courts clearly provide an adequate forum to resolve the present dispute"); *Lana Int'l Ltd. v. Boeing Co.*, No. 93 Civ. 7169, 1995 WL 144152, at *2 (S.D.N.Y. 1995) (dismissing various claims, including fraud and breach of contract, in favor of Ontario Canada, which the court determined "offer[ed] an adequate alternative forum for th[e] action," notwithstanding that plaintiff could not assert claim under the Lanham Act); *Toronto Stock Exch. v. Quotron Syst. Inc.*, No. 91 Civ. 5045, 1992 WL 116636, at *2 (S.D.N.Y.), *aff'd*, 986 F.2d 499 (2d Cir. 1992) ("In this case, Ontario is clearly an adequate alternative forum.").

And, even though Plaintiffs cannot assert RICO claims in Canada, Plaintiffs can still assert their fraud claims, which the Second Circuit has held is a sufficient potential remedy. *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (per curiam) (*forum non conveniens* dismissal of plaintiff's RICO claims appropriate where plaintiff could assert claims on underlying frauds in alternative forum, even if trebled damages unavailable in that forum).

C.  Private and Public Interest Factors Weigh in Favor of Dismissal

A moving defendant satisfies the third and final inquiry for dismissal under the doctrine of *forum non conveniens* where it shows that "the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). The private interest factors that must be balanced in a *forum non conveniens analysis* are: (i) the relative ease of access to sources of proof; (ii) the convenience of willing witnesses; (iii) the availability of compulsory process for obtaining the attendance of unwilling witnesses; and (iv) the other practical problems that can stand in the way of making trial easy, expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

For example, where witnesses and documents are primarily located in a foreign forum, dismissal is appropriate. *See Capital Currency Exch., N.V., v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611-12 (2d Cir. 1998); *Strategic Value Master Fund v. Cargill Fin. Servs.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006). Here, the bulk of Creative Defendants' evidence and witnesses are located in Toronto, where they conduct their businesses and Cloth resides. Thus, while the cost and burdens imposed on the Creative Defendants by litigating in this forum would be greatly increased, requiring Plaintiffs to litigate this dispute in Canada instead of New York would impose little additional hardship on them, as they are based in Florida. Thus, the private interests weigh in favor of a Canadian forum.

The public interest factors also weigh in favor of litigating this dispute in Canada. Those factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil Corp.*, 330 U.S. at 508.

New York has no interest in deciding this dispute between out-of-state parties concerning out-of-state transactions. *See CCS Int'l., v. ECI Telesystems*, 1998 WL 512951, at *10 (S.D.N.Y. 1998) (stating that "there is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere"); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1128 (S.D.N.Y. 1992) ("Such tenuous contacts do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy."). Canada, on the other hand, has a significant interest in adjudicating this dispute, which involves its own residents and will require the interpretation of Ontario law, as required by the Needle and Lionsgate Term Sheets. The public interest factors therefore tilt in favor of Canada, not New York.

D. The Claims Against the Creative Defendants Should Be Severed

For the foregoing reasons, the Creative Defendants should be dismissed from this lawsuit under the doctrine of *forum non conveniens*. To enable their dismissal, the Court should sever Plaintiffs' claims against the Creative Defendants. *Rudersdal v. Harris*, No. 1:18-CV-11072-GHW, 2022 WL 263568, at *6 (S.D.N.Y. 2022) ("A court may sever claims to facilitate dismissal for *forum non conveniens*."); *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117, at *10 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ("[C]ourts may

exercise their discretion to sever claims to facilitate dismissal on forum non conveniens grounds or a transfer of venue.").

Severance is appropriate in this case. While Plaintiffs attempt to rope the Creative Defendants into this forum by alleging a conspiracy between the only New York entity in this action—Hudson—and the remaining defendants, in reality, Plaintiffs' claims against Hudson and its principals relate to the Sourcing Agreement (to which no other defendant was a party), while their claims against the remaining defendants relate to the Term Sheets (to which Hudson and its principals were not parties). Plaintiffs' claims against the Hudson defendants and the Creative Defendants involve different transactions, different issues of fact, and, critically, different issues of state and foreign law. The claims are therefore inherently severable.

In any event, the "'Court has broad discretion to sever [Plaintiffs'] claims against [the Creative Defendants] and may do so for a wide variety of reasons,' even if 'there exist some common question[s] of law and fact' with Plaintiff[s'] claims against other Defendants." *Wave Studio*, 2017 WL 972117, at *10 (internal citations and quotation marks omitted). Where, as here: (i) the relevant claims largely involve different transactions, different questions of law and fact, and different witnesses and evidence; (ii) severance would avoid prejudice to the Creative Defendants; and (iii) severance would streamline the remaining litigation in this forum, severance pursuant to FRCP 21 is appropriate. *See Rudersdal*, 2022 WL 263568, at *6-8. In fact, "[s]everance requires the presence of only one of these conditions." *Wave Studio*, 2017 WL 972117, at *10. Accordingly, in the event that the Court finds that there exists personal jurisdiction over the Creative Defendants, it should dismiss the Creative Defendants from this lawsuit under the doctrine of *forum non conveniens*.

# POINT III

## SEVERAL OF THE FAC'S CAUSES OF ACTION FAIL TO STATE A CLAIM

This is a routine commercial dispute in which Plaintiffs claim that defendants fraudulently induced them to enter into the Term Sheets, which the Creative Defendants breached by failing to fully repay the amounts allegedly due to Plaintiffs. Nevertheless, in attempt to seek treble damages, Plaintiffs characterize themselves as victims of a "fraudulent scheme . . . which amounts to violations of the Racketeer Influenced and Corrupt Organizations Act" and other laws. FAC ¶ 1. They accordingly attempt to mold their allegations to fit the RICO statute—though there is no basis to support such claims—and throw every potential claim against the wall with the hope that some survive dismissal. Nearly all fail as a matter of law.

A. Plaintiffs' First Cause of Action for Civil RICO Violations Fails

This Court has recognized that parties, like Plaintiffs here, often attempt to transform "garden variety fraud or breach of contract cases" into a "vehicle for treble damages" by resorting to "'the litigation equivalent of a thermonuclear device'—a civil RICO suit." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000).

Accordingly, this Court has cautioned that, "[b]ecause the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (citations and internal quotation marks omitted). Therefore, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514,

537 (S.D.N.Y. 2001) (citations and internal quotation marks omitted). The Court should do so here as well and dismiss Plaintiffs' RICO claims.

To state a RICO claim under section 1962(c), "a plaintiff must plead (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (citations and internal quotation marks omitted). These "requirements . . . must be established as to *each individual defendant*." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (emphasis added); *U.S. v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)"). Plaintiffs' first cause of action under 18 U.S.C. § 1962(c) must be dismissed, as Plaintiffs fails to plead several RICO elements against the Creative Defendants.

## I. *Plaintiffs Have Not Sufficiently Alleged an Enterprise*

*First*, Plaintiffs fail to allege an enterprise. "It is well-established that '[t]he enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise'. . . . That is, liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *12 (S.D.N.Y. 2016) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). Thus, "[a] corporation carrying out its own activities (even fraudulent ones) only through its agents and employees does not constitute an enterprise." *Id.*

Here, Plaintiffs fail to allege that any of the Creative Defendants did anything other than conduct their own businesses in the ordinary course for their own benefit, instead of on behalf of the alleged enterprise as a whole. All Plaintiffs allege is that Hudson connected them with certain

of the Creative Defendants and Bron Defendants, which thereafter entered into Term Sheets to finance three films. Although Plaintiffs claim that they were fraudulently induced to enter into the agreements and that "Hudson was beholden to CWMF and self-interested," (*see* FAC ¶ 207), Plaintiffs provide no plausible allegation that all defendants were working together as an enterprise to defraud Plaintiffs, or that any of the defendants transacted with Plaintiffs for the benefit of the alleged "enterprise" as a whole (as opposed to their own individual benefits). *Abbott Labs. v. Adelphia Supply USA*, 15-CV-5826(CBA) (LB), 2017 WL 57802, at *7 (E.D.N.Y. 2017) ("Courts reject such RICO allegations, in which the conduct alleged was taken only for the defendants' benefit, not a separate enterprise's."); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 30 F. Supp. 2d 626, 630 (S.D.N.Y. 1998) ("Plaintiffs do not describe the role, if any, of IBM in the operation or management of this Enterprise. IBM was simply conducting its own 'affairs' in distributing its product."); *Wade Park Land Holdings, LLC v. Kalikow*, 21-cv-1657(LJL), 2022 WL 657664, at *22 (S.D.N.Y.), *amending*, 2022 WL 2479110 (S.D.N.Y. 2022) ("[T]he allegations of the Complaint do not 'plausibly support the inference that the defendants were collectively trying to make money ... by fraud, ... as opposed to the obvious alternative explanation, that they were simply trying to make money.'").

Plaintiffs' RICO claims should therefore be dismissed.

## II.     *Plaintiffs Cannot Establish a "Pattern" of Racketeering Activity*

*Second*, Plaintiffs have failed to allege that any of the Creative Defendants engaged in a pattern of racketeering activity. To plead a pattern of racketeering activity, a plaintiff must "plead at least two predicate acts . . . and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995).

The FAC Fails to Allege Two or More Predicate Acts
    Against Bron Creative, Bron Creative USA or Cloth

As an initial matter, Plaintiffs have failed to plead that Bron Creative, Bron Creative USA or Cloth committed two or more predicate acts. Critically, "[a] RICO plaintiff must show that *each* defendant participated in the RICO enterprise by engaging in at least two predicate acts." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (emphasis in original); *Hoatson v. N.Y. Archdiocese*, No. 05 CIV 10467 PAC, 2007 WL 431098, at *4 (S.D.N.Y. 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008) ("A complaint alleging RICO violations based on mail or wire fraud must allege that the defendant participated in at least two acts of mail or wire fraud.").

Furthermore, allegations of wire fraud "must meet the rigorous pleading requirements of Federal Rule of Civil Procedure 9(b)." *Hoatson*, 2007 WL 431098, at *4; *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (noting that FRCP 9(b)'s provision requiring fraud allegations to be pleaded with particularity "applies to RICO claims for which fraud is the predicate illegal act").

Here, Plaintiffs rely entirely on non-particularized allegations of "wire fraud" against the Creative Defendants, which are plainly insufficient to support a RICO claim. In fact, Plaintiffs do not allege that Bron Creative or Bron Creative USA engaged in *any* acts of wire fraud (or any other predicate acts). Plaintiffs' sparse allegations of wire fraud—while insufficient to state a claim for other reasons discussed below—relate *only* to CWMF and its principal, Cloth. Specifically, Plaintiffs assert that CWMF's pitchbook contained a misrepresentation (*i.e.*, that it had "no defaults"), CWMF's website stated that its financings were not dependent on box office success, a CWMF spreadsheet misrepresented the success of prior financings, and that Cloth provided numerous "false assurances" that Plaintiffs would be repaid their investments. FAC ¶¶ 208, 211.

Plaintiffs do not allege that Bron Creative or Bron Creative USA made *any* misrepresentations whatsoever, let alone engaged in even a single act of wire fraud. To the extent Plaintiffs rely on conclusory group pleading that "Defendants" strung Plaintiffs along (FAC ¶¶ 187, 189, 208), or that "Defendants" provided "numerous false assurances after the loans were made," those allegations are plainly insufficient to satisfy the rigorous pleading requirement of Federal Rule of Civil Procedure 9(b).

Moreover, Cloth's alleged "assurances" that he anticipated repayment of Plaintiffs' investments is insufficient to qualify as a predicate act. Indeed, "[u]nder RICO, fraud-based predicate acts 'must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b),' so the plaintiff must 'specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that [each] defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, No. 20 CIV. 1436 (ER), 2021 WL 1145245, at *10 (S.D.N.Y. 2021) (internal citations omitted).

Here, while Plaintiffs state in conclusory fashion that Cloth "falsely assured" Plaintiffs that they would be repaid their investments in connection with the film financings, Plaintiffs have failed to sufficiently allege with particularity why those communications were actually fraudulent when made, and how it can be inferred from those communications that Cloth harbored an intent to defraud Plaintiffs and knew that his statements were false. *Id.* at *11 ("While Plaintiffs have sufficiently identified purportedly fraudulent statements, such as Singh's statements that payment would be forthcoming, Plaintiffs have not sufficiently alleged why those communications were fraudulent, as required under Federal Rule of Civil Procedure 9(b)."); *Mills v. Polar Molecular Corp.*, Nos. 91 Civ. 0249 (RWS), 91 Civ. 0902 (RWS), 1992 WL 309592, at *7 (S.D.N.Y. 1992)

("Although Rule 9(b) provides that intent and 'other condition of mind' [may] be averred generally, plaintiffs must nonetheless prove some factual basis for conclusory allegations of intent."). Thus, Plaintiffs cannot rely on such statements to support their claims of wire fraud, and their RICO claims against Cloth must be dismissed.

But even if Plaintiffs' allegations were credited—though they should not be—Cloth's handful of communications would qualify, at best, as a single predicate act. Although Plaintiffs would like this Court to count each of Cloth's assurances as separate acts to invoke RICO, courts have rejected similar attempts to cast unitary promises of payment as separate but related acts on the grounds that this is "precisely the type on 'fragmentation' which Congress and the Second Circuit . . . were concerned about." *W.E. Darin Constr. Enters., Inc. v. Detroit Coke Co.*, 814 F. Supp. 325, 332 (W.D.N.Y. 1993); *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO.").

Because Plaintiffs have failed to allege that Bron Creative, Bron Creative USA and Cloth committed two or more predicate acts, the RICO claims should be dismissed against them.

b. Plaintiffs Fail to Allege Sufficient Continuity to Support a RICO Claim

Plaintiffs' RICO claims fail for the independent reason that no *pattern* of predicate acts has been established for any of the Creative Defendants. To sufficiently allege a pattern of predicate acts, they must be related and either amount to or pose a threat of continuing criminal activity. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). "Continuous conduct can be either a 'closed period of repeated conduct,' or an 'open-ended concept' referring to 'past conduct that by its nature projects into the future with a threat of repetition.'" *Thai Airways*

*Int''l Ltd. v. United Aviation Leasing B.V.*, 891 F. Supp. 113, 119 (S.D.N.Y. 1994), *aff'd*, 59 F.3d 20 (2d Cir. 1995) (citation omitted).  Plaintiffs fail to allege either.

i.   *Plaintiffs Cannot Establish Closed-Ended Continuity*

The Supreme Court has held that closed-ended continuity requires "proving a series of related predicates extending over a substantial period of time," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989), and the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.'"  *Wade Park Land Holdings*, 2022 WL 657664, at *28.

The first alleged act involving any of the Creative Defendants was on August 14, 2017, when "Conover formally introduced Bayshore to CWMF" and sent Bayshore a copy of CWMF's pitchbook, which contained the phrase "No Defaults."  FAC ¶¶ 59-60.  Even assuming this statement sufficiently alleges wire fraud—it does not, as Plaintiffs do not even attempt to provide any basis for claiming that this statement was false at the time it was made—the last allegedly fraudulent act at issue in the Complaint concluded on October 17, 2018, when Plaintiffs entered into Term Sheets to provide funds for the Nightingale.  *See* FAC ¶¶ 172, 178.  In other words, only *fourteen months* elapsed between the time that Bayshore was introduced to any of the Creative Defendants and when Plaintiffs entered into the final Term Sheet.  This amount of time is plainly insufficient to establish closed-ended continuity.

In a misplaced effort to stretch out the continuity period as far as possible, Plaintiffs reference purported misrepresentations *after* they already provided financing to certain of the Creative Defendants, such as Cloth's statements that "we anticipate being paid out all at once," that payments would start to arrive within weeks, that Plaintiffs would be repaid from other sources, and that he was working on deals that would allow repayment of Bayshore's investments.  *See* FAC ¶¶ 185-190.

As discussed above, none of those allegations sufficiently explain why such statements were actually false when made as required under FRCP 9(b), (*Wade Park Land Holdings*, 2022 WL 657664, at *26), and importantly, Plaintiffs fail to explain how any alleged misrepresentations that post-date Plaintiffs' financings could have induced them to provide funds to the Creative Defendants months earlier. Such alleged statements cannot serve as a predicate for RICO claims. *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) ("Reliance on the allegedly fraudulent representation as the cause of the injury is the *sine qua non* of a predicate act of wire fraud . . . and it is logically impossible that [Plaintiff] (or its shareholders) could have relied on wire transmissions . . . that post-dated the last act of corporate pilferage."). Moreover, Plaintiffs plainly cannot rely on assertions that Cloth made these statements to prevent Plaintiffs from taking steps to enforce their rights, (*see, e.g.*, FAC ¶¶ 8, 189, 208), as they are purely conclusory and speculative, and cannot satisfy the heightened pleading standard for fraud claims. *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 609-10 (S.D.N.Y. 2015).

But even if Plaintiffs had alleged predicate acts spanning a substantial period of time, they still would not establish closed-ended continuity, because they allege only a single, limited "scheme," involving a limited number of predicate acts, participants and victims. At its core, Plaintiffs' FAC involves two alleged related victims—BCA and its client, RTR—which entered into three related transactions within a roughly three-month period.

Try as they might, Plaintiffs cannot state a valid RICO claim by claiming these few transactions and related alleged misrepresentations constitute a "pattern" of racketeering activity. *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 261 (S.D.N.Y. 2009) ("[T]he alleged scheme had only two participants, and Kang and his company, Moolsan, were the only victims. In addition, all of the alleged predicate acts were 'subparts' of the same transaction

and, thus, do not constitute continuous activity under RICO."); *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009) ("[C]ourts in this Circuit have held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property— as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity, and thus to satisfy to 'pattern' element of a plausible RICO claim.").

This is not the type of case which the RICO statute was meant to address, and the Court should not permit Plaintiffs to make a federal case out of simple claims of nonpayment. *Lefkowitz v. Reissman*, No. 12 CIV. 8703 RA, 2014 WL 925410, at *8 (S.D.N.Y. 2014) ("The Court therefore concludes that the majority of Plaintiff's predicate acts 'amount merely to a breach of contract claim and common business torts, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach[es] w[ere] fraudulent, indeed criminal.' . . . To the extent that the statement made in connection with the [transaction] provides a plausible basis for RICO predicate acts, those acts do not suffice to show a 'pattern of racketeering.'").

## ii. *Plaintiffs Cannot Establish Open-Ended Continuity*

As to open-ended continuity, Plaintiffs "need to allege "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Lefkowitz*, 2014 WL 925410, at *7. "Courts begin this inquiry by considering the nature of the enterprise and predicate acts alleged." *Id.* "Where the acts are 'inherently unlawful'—such as murder or obstruction of justice—and are done in pursuit of 'inherently unlawful goals,' such as narcotics trafficking or embezzlement, courts presume a threat of continued unlawful activity." *Id.* However, "[w]hen the predicate acts are not inherently unlawful, courts look to external factors, such as whether the

scheme is inherently terminable, and whether plaintiff has offered any concrete basis for concluding that the predicate acts are likely to continue into the future." *Id.*

None of the alleged predicate acts are inherently unlawful. Instead, "Plaintiff[s] allege[] a number of predicate acts typical of a run-of-the-mill fraud. Plaintiff[s] allege[], *inter alia*, verbal and written misrepresentations . . . constituting wire and mail fraud. None of these acts are inherently unlawful, but rather are typical of garden-variety fraud claims." *Skylon Corp. v. Guilford Mills, Inc.*, No. 93 CIV. 5581 LAP, 1997 WL 88894, at *6 (S.D.N.Y. 1997) (internal citations omitted); *Ho Myung Moolsan*, 665 F. Supp. at 261 (stating that alleged "fraud is not 'inherently unlawful' in the RICO context").

Plaintiffs have not alleged any facts supporting a finding that the simple alleged "scheme" to misrepresent the risk of the film financings and thereby defraud Plaintiffs of their funds poses a threat of repetition. *Ixotic AG v. Kammer*, No. 09-CV-4345 NGJO, 2015 WL 270028, at *12 (E.D.N.Y. 2015) ("Despite the fact that it allegedly took place in different locations around the world and involved dummy entities and individuals, the scheme alleged here is a relatively simple one: through wire communications, the defendants held out the promise of releasing loan proceeds to the plaintiffs—with no intention of ever doing so—who in turn, continued to enter additional contracts with and make continued payments to the defendants based on an erroneous belief that the defendants would ultimately release the loan funds. Such a fraudulent scheme—with the single goal of defrauding a single group of victims—does not inherently pose a threat of repetition that projects into the future, and therefore fails to establish open-ended continuity."); *Thai Airways*, 891 F. Supp. at 119 ("Courts have found insufficient threat of continuity where the racketeering acts involved a brief period of time, relatively few criminal acts, an uncomplicated scheme, few participants, and few victims.").

Moreover, a RICO plaintiff cannot establish open-ended continuity with conclusory group-pleading that "the predicate acts reflect Defendants' regular way of doing business" and that Defendants "seek to lure new investors into the financing scheme." FAC ¶¶ 217, 220. Indeed, "[s]uch vague allegations of continuity are insufficient to support a finding of open-ended continuity." *Ho Myung Moolsan*, 665 F. Supp. at 261.

In sum, Plaintiffs have shown no threat of wire fraud occurring in the future. *Astorino*, 137 F. Supp. 3d at 612 ("Plaintiffs have not alleged sufficient facts plausibly showing that any such activity is ongoing, or that it is being done using wires or mail, and their claim to the contrary is simply speculative."). Plaintiffs last advanced funds nearly *four years ago* (*i.e.*, October 17, 2018), undermining any claim that the purported racketeering activity is ongoing. *Thai Airways*, 891 F. Supp. at 119 (dismissing claims in the absence of claim that "defendants continue to convert the trust funds proffered by other[s]" and no justifiable inference that defendants' acts "represent their ordinary way of doing business"). Accordingly, Plaintiffs have failed to establish continuity, and their RICO claim should be dismissed.

## B. Plaintiffs' Second Cause of Action for RICO Conspiracy Necessarily Fails

Because Plaintiffs' substantive RICO claim fails, their second cause of action for RICO conspiracy necessarily fails as a matter of law. *Kades v. Organic Inc.*, No. 00-Civ-3671 (LTS(RLE), 2003 WL 470331, at *14 (S.D.N.Y. 2003) ("There can be no RICO conspiracy without a substantive RICO violation …. Thus, if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations.").

Furthermore, Plaintiffs' conspiracy claim fails for the independent reason that Plaintiffs do not sufficiently allege that any of (let alone each of) the Creative Defendants knowingly agreed to

participate in the alleged conspiracy. *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 451 (S.D.N.Y. 2012), *aff'd*, 511 F. App'x 57 (2d Cir. 2013) ("The Court of Appeals for the Second Circuit has explained that, in a civil RICO conspiracy case, the plaintiff must establish that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity.").

Plaintiffs' conclusory allegation that "each Defendant agreed to and conspired" to commit the alleged predicate acts is insufficient to state a claim for RICO conspiracy (FAC ¶ 227), and the second cause of action should be dismissed. *Nasik Breeding*, 165 F. Supp. 2d at 541 (dismissing RICO civil conspiracy claim for failure to assert a substantive RICO claim and, alternatively, for asserting only "conclusory" allegations that defendants agreed to participate in a conspiracy, without providing "specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy").

C. Plaintiffs' Fraud Claim (3rd Cause of Action) Fails to State a Claim

Plaintiffs' fraud claim alleges that all defendants fraudulently induced Plaintiffs to enter into the Term Sheets through misrepresentations that the financings were not dependent on the commercial success of the films, the financings were secured by collateral, most of CWMF's prior financings were fully repaid, CWMF had no prior defaults, and Plaintiffs' principal and interest would be repaid. FAC ¶ 231. Plaintiffs also allege that defendants failed to disclose that CWMF had previously loaned funds to Hudson and that investors in prior financings filed lawsuits against certain of the Creative Defendants. *Id.* ¶ 207.

These allegations fail to state a claim for two independent reasons. *First*, Plaintiffs do not allege any damages separate and apart from those recoverable under their breach of contract claims, and the fraud claim is therefore impermissibly duplicative. *See Manas v. VMS Assocs., LLC*, 53 A.D.3d 451, 454, 863 N.Y.S.2d 4, 7 (1st Dep't 2008) (dismissing fraud claim where, as

here, "plaintiff did not allege that she sustained any damages that would not be recoverable under her breach of contract cause of action"); *accord Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1240 (Fla. Dist. Ct. App. 2020).[7] Indeed, Plaintiffs seek $12,365,160.75 on behalf of Bayshore and $2,324,323.28 on behalf of RTR, which are equal to the total of alleged damages they claim on their breach of contract causes of action. (*Compare* FAC ¶ 234 *with* FAC ¶¶ 245, 250, 255.) The fraud claim therefore fails as against the Creative Defendants.

*Second*, while Plaintiffs focus on alleged misrepresentations made by CWMF, the FAC does not specifically allege that Bron Creative or Bron Creative USA made *any* misrepresentations in connection with Plaintiffs' entry into the Term Sheets. Plaintiffs' vague group pleading that "Defendants" made misrepresentations is insufficient to state a claim for fraud. *Stanley v. OptumInsight, Inc.*, No. 1:13-CV-00944, 2014 WL 906145, at *5 (N.D.N.Y. 2014) ("Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud.").

As to Cloth, the only alleged misrepresentations that he purportedly made were his several "assurances" that Plaintiffs would be repaid under the Term Sheets. But these statements cannot form the basis of a fraud claim, as they are mere statements of intent to perform. They do not support a fraud claim. *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (rejecting fraudulent inducement claim based on allegedly false statements that "Carriage House was able to pay what it owed under the sales contract, and intended to do so"); *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 506-07 (S.D.N.Y. 2017) ("After that contractual duty kicked in, any further statements about [defendant]'s ability or intention to pay the $3 million,

---

[7] The FAC does not address the issue of which jurisdiction's law applies to each of Plaintiffs' state law claims. As set forth herein, Plaintiffs' claims fail regardless of the law that is applied.

whether false or not, are not cognizable . . . because they amount to mere false assurances of [defendant's] intent to perform the 2015 Contract.").[8]

D.  Plaintiffs' Causes of Action for Breach of the Covenant of
Good Faith and Fair Dealing (8th through 10th),
<u>Unjust Enrichment (13th) and an Accounting (14th) Should be Dismissed</u>

Several of Plaintiffs' other causes of action also cannot survive dismissal.  <u>First</u>, their causes of action for breach of the covenant of good faith and fair dealing are indistinguishable from their breach of contract claims and are therefore impermissibly duplicative.  Indeed, their claims simply allege that the Defendants breached the respective agreements "including by failing to repay money owed to [Plaintiffs] and failing to secure [Plaintiffs'] collateral," (FAC ¶¶ 258, 265, 272), which are the virtually the same as the breaches alleged in their breach of contract claims.  *See* FAC ¶¶ 244, 249, 254; *see also Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("[W]hen a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim.")); *see also 1001411 Ontario Ltd. v. City of Toronto Economic Dev. Corp.*, 2012 ONSC 5429, 2012 CarswellOnt 11813, at ¶ 8 (Can. Sup. Ct. Justice 2012) ("The implication of a duty of good faith has not gone so far as to create new, unbargained-for, rights and obligations."); *accord Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335-36, 514 N.Y.S.2d 209, 212-13 (1987) (applying the same standard under New York law).

---

[8] The Court should similarly reject Plaintiffs' allegation that Bron Creative and/or Cloth failed "to disclose other lawsuits brought by prior film investors," (FAC ¶ 231. d.), as Plaintiffs' themselves allege that such lawsuits were initiated *after* Plaintiffs entered into the Terms Sheets. FAC ¶¶ 71, 168. There was therefore nothing to disclose.  Nor is there any basis to claim that Bron Creative or Cloth were required to disclose an alleged brewing dispute with third-party investors or that such information was material to Plaintiffs' transactions.

Plaintiffs also fail in their attempt to tack punitive damages onto their good faith and fair dealing claims. Plaintiffs have not alleged that the purported breaches constituted an "independent tort," that such conduct was "egregious," and that was "part of a pattern directed at the public generally." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287 (1995). Accordingly, even if Plaintiffs had alleged any breach of the covenant of good faith and fair dealing (they have not), their punitive damages claims must be dismissed.

Second, Plaintiffs' claim for unjust enrichment fails because it, too, is duplicative of Plaintiffs' claim for breach of contract. Indeed, Plaintiffs' sole allegations is that Defendants were "enriched" by failing to repay amounts allegedly due under the Term Sheets. (FAC ¶ 290). A plaintiffs cannot pursue a claim for unjust enrichment where, as here, an express contract exists. *See Word of God Fellowship, Inc. v. Vimeo, Inc.*, 205 A.D.3d 23, 30, 166 N.Y.S.3d 3, 6 (1st Dep't 2022) ("Because a contract governs this dispute, Daystar cannot maintain a cause of action for unjust enrichment."); *accord Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 430 (Fla. Dist. Ct. App. 2022) ("[I]it is well settled that a plaintiff 'cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.'"); *Thunder Bay Masonic Found. v. Sovereign Gen. Ins. Co.*, 2014 ONSC 4142, 2014 CarswellOnt 10748, at ¶ 25 (Can. Sup. Ct. Justice 2012) (stating that claims for quantum meruit and "unjust enrichment are claims which arise where there is no contract"). Additionally, there is no basis for asserting such a claim against Cloth, as there is no allegation that he personally received funds from Plaintiffs.

Third and finally, Plaintiffs' claim for an accounting fails. The Terms Sheets are arms-length agreements and could not create a fiduciary relationship between the parties—a prerequisite to seeking an accounting—and Plaintiffs claims for breach of contract provide them with an

adequate remedy. *See Grgurev v. Licul*, 229 F. Supp. 3d 267, 290-91 (S.D.N.Y. 2017) (dismissing accounting claim for failure to sufficiently allege a fiduciary or confidential relationship); *Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990) ("Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate.").

Accordingly, the Court should dismiss Plaintiffs' claims for breach of the covenant of good faith and fair dealing, unjust enrichment and for an accounting.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Creative Defendants respectfully request that the Court grant their motion to dismiss in its entirety.

Dated: New York, New York
August 26, 2022

HERRICK, FEINSTEIN LLP

By:  */s/ William R. Fried*
William R. Fried, Esq.
Samuel J. Bazian, Esq.
Daniel A. Field, Esq.
2 Park Avenue
New York, New York 10016
(212) 592-1400
*Attorneys for Defendants Creative Wealth Media Finance Corp., Bron Creative Corp., Bron Creative USA, Corp., and Jason Cloth*