## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAYSHORE CAPITAL ADVISORS, LLC, BCA ALTERNATIVE INCOME FUND, LP, and ROCKING T RANCH, LLLP, <br><br> Plaintiffs, <br><br> v. <br><br> CREATIVE WEALTH MEDIA FINANCE CORP., BRON CREATIVE CORP., BRON CREATIVE USA CORP., BRON STUDIOS, INC., BRON STUDIOS USA, INC., HUDSON VALLEY WEALTH MANAGEMENT, INC., JASON CLOTH, AARON L. GILBERT, CHRISTOPHER CONOVER, DAVID K. JONAS, and DOES 1-21, <br><br> Defendants. | Case No. 22-cv-1105-KMK <br> Hon. Kenneth M. Karas |

### MEMORANDUM OF LAW IN SUPPORT OF BRON STUDIOS, INC.'S, BRON STUDIOS USA, INC.'S, AND AARON L. GILBERT'S
### <u>MOTION TO DISMISS</u>

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2300
(f) +1 212 446 2380

*Attorneys for Defendants BRON Studios, Inc., BRON Studios USA, Inc., and Aaron L. Gilbert*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................... iv

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS ........................................................ 2

    A.    Mr. Gilbert, BRON Studios Canada, and BRON Studios USA Produce Major Motion Pictures Independent of the Other Defendants ......................................... 2

    B.    Plaintiff Bayshore and Defendant Hudson Discuss Investing in Films ................. 3

    C.    Plaintiffs Contract with Hudson and Enter into the Needle, Lionsgate, and RTR Term Sheets, Without Claiming to Have Ever Contacted the BRON Studios Defendants. ................................................................................................ 3

PROCEDURAL HISTORY ........................................................................................... 6

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.    Plaintiffs Have Failed to Establish Personal Jurisdiction over BRON Studios Canada or Mr. Gilbert for Any Claims. ........................................................................................ 7

II.    Plaintiffs Have Failed to State a RICO Enterprise or Conspiracy Claim. .......................... 9

    A.    Plaintiffs Have Failed to Plead a Pattern of Racketeering Activity. ...................... 9

    B.    Plaintiffs Have Failed to Plead Enterprise and Common Purpose. ..................... 16

    C.    Plaintiffs Have Failed to Plead a RICO Conspiracy. ........................................... 16

III.    Plaintiffs Have Not Established Personal Jurisdiction over BRON Studios USA for the Remaining Claims. ...................................................................................................... 17

IV.    Plaintiffs Have Failed to State a Claim for Fraud or Aiding and Abetting Fraud. ........... 18

    A.    Aiding and Abetting Requires Knowledge to Be Pleaded with Specificity, But Plaintiffs Have Not Done So. ........................................................................ 19

    B.    Plaintiffs Have Failed to Plead Substantial Assistance with Specificity. ............. 20

V.    Plaintiffs Have Failed to State a Claim for Breach of Contract or Breach of the Covenant of Good Faith and Fair Dealing. ....................................................................... 21

    A.    BRON Studios Canada Is Not a Party to the Allegedly Breached Agreements. ... 21

B.      Because the Term Sheets Do Not Obligate BRON Studios USA to Repay Any Money or Secure Any Collateral, They Foreclose Plaintiffs' Theory of Breach. ...................................................................................................... 21

C.      Plaintiffs Have Failed to Plead Breach of the Covenant of Good Faith and Fair Dealing, Let Alone a Breach That Would Support Punitive Damages. ........ 22

VI.     Plaintiffs' Unjust Enrichment Claim is Both Duplicative and Without Merit.................. 23

VII.    Plaintiffs Have Failed to Plead the Basis for Any Fiduciary Duties and Therefore Their Claim for an Accounting Must be Dismissed. ........................................................ 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,

2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ........................................................... 9

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,

651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................... 19

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*,

58 A.D.3d 6 (2d Dep't 2008) ................................................................................. 24

*Allen v. New World Coffee, Inc.*,

2001 WL 293683 (S.D.N.Y. 2001) ....................................................................... 16

*Am./Int'l 1994 Venture v. Mau*,

146 A.D.3d 40 (2d Dept. 2016) ............................................................................... 8

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ................................................................................................. 7

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,

477 F. Supp. 3d 88 (S.D.N.Y. 2020) ..................................................................... 13

*Bangkok Crafts Corp. v. Capitolio di San Pietro in Vaticano*,

331 F. Supp. 2d 247 (S.D.N.Y. 2004) ................................................................... 12

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) ................................................................................................. 7

*Brown v. Showtime Networks, Inc.*,

394 F. Supp. 3d 418 (S.D.N.Y. 2019) ..................................................................... 8

*Casio Computer Co., Ltd. v. Sayo*,

2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ....................................................... 15

*Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*,

187 F.3d 229 (2d Cir. 1999) .............................................................................. 9, 16

*Conopco, Inc. v. Wein*,

2007 WL 9818902 (S.D.N.Y. Aug. 31, 2007) ....................................................... 12

*Corsello v. Verizon N.Y., Inc.*,

18 N.Y.3d 777 (2012) ............................................................................................ 23

*DeFalco v. Bernas*,

    244 F.3d 286 (2d Cir. 2001) ....................................................................... 12

*DirecTV Latin Am., LLC v. Park 610, LLC*,

    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ......................................................... 7

*Eden v. St. Luke's-Roosevelt Hosp. Ctr.*,

    96 A.D.3d 614 (1st Dep't 2012) ................................................................. 25

*Elsevier, Inc. v. Grossman*,

    77 F. Supp. 3d 331 (S.D.N.Y. 2015) ........................................................... 7

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,

    385 F.3d 159 (2d Cir. 2004) ......................................................................... 9

*First Equity Realty v. Harmony Grp., II*,

    68 Misc. 3d 1216(A) (N.Y. Sup. Ct., N.Y. Cnty. 2020) ........................... 25

*Fisk v. Letterman*,

    424 F. Supp. 2d 670 (S.D.N.Y. 2006) ....................................................... 12

*Fuji Photo Film U.S.A., Inc. v. McNulty*,

    640 F. Supp. 2d 300 (S.D.N.Y. 2009) ....................................................... 17

*Georgia Malone & Co., Inc. v. Rieder*,

    19 N.Y.3d 511 (2012) ................................................................................. 23

*Gmurzynska v. Hutton*,

    257 F.Supp.2d 621 (S.D.N.Y.2003) ............................................................ 7

*Gucci Am., Inc. v. Weixing Li*,

    768 F.3d 122 (2d Cir. 2014) ......................................................................... 9

*H.J. Inc. v. Nw. Bell Tel. Co.*,

    492 U.S. 229 (1989) ................................................................................... 15

*Hadami, S.A. v. Xerox Corp.*,

    272 F. Supp. 3d 587 (S.D.N.Y. 2017) ....................................................... 22

*Heinert v. Bank of Am. N.A.*,

    835 F. App'x 627 (2d Cir. 2020) ................................................................ 20

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,

    331 F. Supp. 3d 130 (S.D.N.Y. 2018) ......................................................... 7

*ICD Cap., LLC v. CodeSmart Holdings, Inc.*,

    842 F. App'x 705 (2d Cir. 2021) ............................................................ 19

*In re AlphaStar Ins. Grp. Ltd.*,

    383 B.R. 231 (Bankr. S.D.N.Y. 2008) .................................................... 12

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,

    921 F. Supp. 2d 56 (S.D.N.Y. 2013) ......................................................... 2

*Int'l Telecom, Inc. v. Generadora Electrica del Oriente S.A.*,

    2002 WL 465291 (S.D.N.Y. Mar. 27, 2002) ................................... 10, 12

*Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*,

    919 F. Supp. 2d 321 (S.D.N.Y. 2013) .................................................... 19

*Koether v. Sherry*,

    40 Misc. 3d 1237(A) (N.Y. Sup. Ct., Kings Cnty. 2013) ...................... 25

*L. Magarian & Co. v. Timberland Co.*,

    245 A.D.2d 69 (1st Dep't 1997) ............................................................. 25

*Lerner v. Fleet Bank, N.A.*,

    459 F.3d 273 (2d Cir. 2006) ................................................................... 19

*Mandarin Trading Ltd. v. Wildenstein*,

    16 N.Y.3d 173 (2011) ............................................................................. 24

*Manela v. Gottlieb*,

    784 F. Supp. 84 (S.D.N.Y. 1992) ........................................................... 11

*Mead v. Schaub*,

    757 F. Supp. 319 (S.D.N.Y. 1991) ......................................................... 15

*New York Univ. v. Cont'l Ins. Co.*,

    87 N.Y.2d 308 (1995) ............................................................................. 23

*NuMSP, LLC v. St. Etienne*,

    462 F. Supp. 3d 330 (S.D.N.Y. 2020) ...................................................... 6

*Palatkevich v. Choupak*,

    152 F. Supp. 3d 201 (S.D.N.Y. 2016) ...................................................... 9

*Pilkington North America, Inc. v. Mitsui Sumitomo Insurance CO. of America*,

    420 F. Supp. 3d 123 (S.D.N.Y. 2019) .................................................... 21

*Preserver, LP v. Creative Wealth Media Finance Corp.*,

    (S.D.N.Y. 2021) ................................................................................. 15

*Rich v. N.Y. Cent. & Hudson River R.R. Co.*,

    87 N.Y. 382 (1882) ............................................................................. 23

*Ryan v. Hunton & Williams*,

    2000 WL 1375265 (E.D.NY. Sept. 20, 2000) .................................... 20

*Saul v. Cahan*,

    153 A.D.3d 947 (2d Dep't 2017) ....................................................... 24

*Stander v. Fin. Clearing & Servs. Corp.*,

    718 F. Supp. 1204 (S.D.N.Y. 1989) .................................................. 10

*Terra Secs. ASA Konkursbo v. Citigroup, Inc.*,

    820 F. Supp. 2d 541 (S.D.N.Y. 2011) ............................................... 14

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*,

    241 F.3d 135 (2d Cir. 2001) ................................................................ 8

*Vitale v. Steinberg*,

    307 A.D.2d 107 (1st Dep't 2003) ...................................................... 24

*Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc.*,

    983 F. Supp. 173 (E.D.N.Y. 1997) ..................................................... 8

*Zamora v. FIT Int'l Grp. Corp.*,

    834 F. App'x 622 (2d Cir. 2020) ...................................................... 17

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs.*,

    2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ..................................... 9

**Statutes and Rules**

18 U.S.C. § 1962 ..................................................................... 9, 12, 16, 17

18 U.S.C. § 1965 ............................................................................. 7, 18

Fed. R. Civ. P. 9 ........................................................................... *passim*

N.Y. C.P.L.R. §§ 301-302 .............................................................. 8, 18

Defendants BRON Studios, Inc. ("BRON Studios Canada"), BRON Studios USA, Inc. ("BRON Studios USA"), and Aaron L. Gilbert (together, the "BRON Studios Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

Underneath its bombast and group-pleading, the FAC's claims against the BRON Studios Defendants have four fundamental flaws requiring dismissal.

*First*, the FAC (despite claiming fraud and a RICO enterprise based thereon), does not identify a single specific communication between any of the Plaintiffs and any BRON Studios Defendant. Because fraud and fraud-derived RICO claims must be pleaded with specificity, Plaintiffs cannot make up for their lack of allegations with conclusory and vague assertions that the BRON Studios Defendants somehow "participat[ed]" in statements by other defendants.

*Second*, what little the FAC does allege about the BRON Studios Defendants is contradicted by the contracts on which Plaintiffs' base their claims of fraud, RICO enterprise and conspiracy, breach, good faith and fair dealing, unjust enrichment, and accounting: the Needle, Lionsgate, and RTR term sheets. Most glaringly, BRON Studios Canada is not a signatory to any of these alleged term sheets and therefore not a proper defendant under any of these claims.

The alleged term sheets also put the lie to Plaintiffs' claims against BRON Studios USA and Mr. Gilbert (who allegedly signed two of the three contracts). Plaintiffs claim that BRON Studios USA promised to repay money and secure collateral under these agreements, but BRON Studios USA is *not the borrower under any of them,* and none impose any repayment or collateral obligations on BRON Studios USA. The Lionsgate and RTR agreements, for example, merely recorded BRON Studios USA's position, alongside Plaintiffs', in payment waterfalls to

be made by *other parties*. The Needle agreement, in turn, at most requires BRON Studios USA to provide one plaintiff with "Contingent Compensation," but the FAC concedes that this contingency—repayment of the Needle Term Sheet loan by another party—has not arisen. Nor do these agreements establish any special circumstances permitting an accounting claim.

*Third*, Plaintiffs added an aiding-and-abetting fraud claim to the FAC, while ignoring that scienter for this claim must be pleaded with *specificity*. Because the FAC lacks any specific allegations showing that the BRON Studios Defendants had actual knowledge of the alleged fraud, this claim too must be dismissed.

*Finally*, because Plaintiffs have failed to plead a viable RICO claim against the BRON Studios Defendants, and because the FAC lacks non-conclusory allegations of the necessary contacts for specific jurisdiction, Plaintiffs have failed to establish personal jurisdiction over any of the BRON Studios Defendants. The FAC should be dismissed with prejudice.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The below summary is based on the allegations in the FAC as well as the terms of those documents that are cited in and "integral" to Plaintiffs' claims. *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 (S.D.N.Y. 2013). The BRON Studios Defendants do not concede, and reserve the right to contest, the FAC's allegations.

### A.      Mr. Gilbert, BRON Studios Canada, and BRON Studios USA Produce Major Motion Pictures Independent of the Other Defendants.

Plaintiffs allege that BRON Studios Canada and BRON Studios USA are "major movie studio[s]" co-founded by Mr. Gilbert and his wife, FAC ¶ 238; *see id.* ¶¶ 31, 80 & n.1. While "certain of" their films are financed by defendants "BRON Creative" or Creative Wealth Media Financing Corp. ("CWMF"), the studios also produce films "independent of the" other defendants. *Id.* ¶¶ 44, 79. Some of their films are financially successful; others are not. *Id.* ¶ 79.

**B.      Plaintiff Bayshore and Defendant Hudson Discuss Investing in Films.**

Plaintiffs are sophisticated investors who were interested in investing in films.  *See id.*
¶¶ 10-16, 89.  In 2016, Plaintiff Bayshore Capital Advisors, LLC ("Bayshore"), was introduced
to Defendant Hudson Valley Wealth Management, Inc., and for "nearly two year[s]" thereafter,
the two communicated about potential investments in film financing.  *Id.* ¶ 50.

In August 2017, Hudson "emailed Bayshore about a 'new opportunity' for film
financing," claiming that Hudson "had a 'relationship with the production company.'"  *Id.* ¶¶ 57-
58.  Plaintiffs assert that this "production company was BRON Studios," defined in the FAC as
either BRON Studios Canada or BRON Studios USA.  *Id.* ¶ 58; *see id.* at ¶ 29.  Plaintiffs
however do not allege to have contacted, or attempted to contact, any BRON Studios Defendant
about this or any other opportunity.

**C.      Plaintiffs Contract with Hudson and Enter into the Needle, Lionsgate, and
         RTR Term Sheets, Without Claiming to Have Ever Contacted the BRON
         Studios Defendants.**

The FAC alleges that in May 2018, BRON Studios USA entered into an agreement with
CWMF regarding the film Needle in a Timestack ("Needle") and that pursuant to this agreement,
CWMF "agree[d] to lend $8.625 million to Needle in a Timestack, LLC, to fund the production
costs for Needle."  *Id.* ¶¶ 109-110; *see id.* at 98.

On June 26, 2018, Hudson contacted Bayshore about investing $2.5 million to finance
Needle.  *Id.* ¶ 99.  Hudson represented to Bayshore "that BRON Studios would be associated
with the film."  *Id.* ¶ 100.  That same day, Hudson also emailed Bayshore about an opportunity
to loan money toward four films (the "Lionsgate Slate") being produced by Lionsgate.  *Id.* ¶ 134.

Three days after learning of these opportunities, and despite still having never
communicated with BRON Studios Canada, BRON Studios USA, or Mr. Gilbert, Bayshore
"entered into a sourcing agreement" with Hudson, pursuant to which it "agreed to an $8 million

funding commitment," for film loan opportunities that met certain criteria, including that such films must be "[p]roduced or co-produced by BRON Studios USA." *Id.* ¶¶ 88-90.

The following week, Plaintiff BCA Alternative Income Fund, LP ("BAIF"), an affiliate of Bayshore, entered into the "Needle Term Sheet." *Id.* ¶ 104. The term sheet is dated July 5, 2018, and states that it is an "agreement by and among Creative Wealth Media Finance Corp ('CWMF'), an Ontario limited partnership, and BCA Alternative Income Fund LP, a limited partnership." Declaration of Benjamin Margulis, Ex. 1 at 1 (Needle Term Sheet). The term sheet defines CWMF and BAIF as the sole "Parties" to the agreement. *Id.*

The term sheet further states that BAIF "wishes to participate in" CWMF's "financing of the Picture [Needle]" and is loaning $2,500,000 to CWMF. *Id.* CWMF agreed to repay the loan with interest and to provide collateral; "CWMF further represent[ed], warrant[ed], and agree[d] that it has the ability to fully perform all of its financial obligations hereunder." *Id.* at 1-2.

Although not one of the "Parties" to the term sheet, BRON Studios USA is referred to in the "RECITALS" as having previously entered into a May 2018 "Loan Agreement" with CWMF regarding Needle, and the signature page includes a signature for BRON Studios USA. *Id.* at 1, 4. BRON Studios USA's signature line (signed by Jason Cloth, FAC ¶ 107), is in its own column, offset from the signatures for the two "Parties," CWMF and BAIF, Margulis Decl., Ex. 1 at 1, 4. The term sheet's *only other reference* to BRON Studios USA is in the "Contingent Compensation" section, which states: "Following repayment in full to [BAIF] of the Principal & Interest stated above, (the 'BCA Financing') any further proceeds received by Bron Studios USA Inc. under the Loan Agreement shall be distributed as follows: . . . 6 % to [BAIF]." *Id.* at 1.

Four days later, on July 9, 2018, BAIF entered into a term sheet regarding the Lionsgate Slate. *Id.* ¶ 138. This term sheet was amended on August 1, 2018, yielding the "Lionsgate Term

Sheet." *Id.* The term sheet states that it is an "agreement by and among BRON Creative USA Corp. . . . , BRON Studios USA, Inc. . . . , Creative Wealth Media Finance Corp. . . ., and BCA Alternative Income Fund LP." Margulis Decl., Ex. 3 at 1 (Lionsgate Term Sheet). It states that "BRON Creative [USA] entered into a partnership agreement with Hercules Film Investors I (US), Inc.," pursuant to which "BRON Creative [USA], has agreed to finance" certain Lionsgate films and that BAIF "wishes to participate in the co-financing of the partnership." *Id.*

The term sheet provides that BAIF will lend $3,500,000 at a 12% interest rate to CWMF, who "on receipt of funding," shall pay that amount "in accordance with the Partnership Agreement and/or" the specific agreements for each Lionsgate film. *Id.* at 1-2. "CWMF further represent[ed], warrant[ed] and agree[d] that it has the ability to fully perform all of its financial obligations hereunder . . . ." *Id.* at 2. There is no mention of collateral or security.

Mr. Gilbert is alleged to have signed the term sheet for BRON Creative USA and BRON Studios USA. FAC ¶ 145. The latter has no performance obligations under the term sheet: it appears only as a recipient in two payment waterfalls. Margulis Decl., Ex. 3 at 1-2. The first waterfall is for the division of the "Facilitation Fees" to "be paid by Lionsgates from the Production Budget." *Id.* at 1. The second waterfall provides for the division of "any further proceeds received by BRON Creative [USA]" "[f]ollowing repayment in full to [BAIF] of the [BAIF] Fixed Return (interest and principal)." *Id.* at 2. In both cases, the waterfalls at most show BRON Studios USA agreeing to its respective share, not to make any payments. *Id.* at 1-2.

BRON Studios USA's and BRON Creative USA's only representations and warranties in the agreement are the general representations made by "[t]he Parties" that "each has the full right, power and authority to enter into and perform this Term Sheet" and it has not "assigned, hypothecated, encumbered or otherwise transferred (or entered into an agreement to do any of

the foregoing) any rights contemplated hereunder to any other party or person." *Id.* at 2. Plaintiffs have not alleged either of these representations to be false.

Also on August 1, 2018, Plaintiff Rocking T Ranch, LLLP ("RTR") entered into a "substantially identical" term sheet regarding the Lionsgate Slate, except that RTR, rather than BAIF, was the lender to CWMF, and the loan amount was $500,000. FAC ¶ 142. The agreement's terms regarding BRON Studios USA and BRON Creative USA are identical to the Lionsgate Term Sheet. *Compare* Margulis Decl., Ex. 4 at 1-2 (RTR Term Sheet), *with* Margulis Decl., Ex. 3 at 1-2. Mr. Gilbert is alleged to have signed the term sheet on behalf of BRON Studios USA and BRON Creative USA. FAC ¶ 145.

Plaintiffs do not allege any subsequent contracts with, nor do they allege ever communicating with, any of the BRON Studios Defendants. As of January 31, 2022, BAIF's and RTR's loans under the term sheets have not been paid in full. FAC ¶¶ 131, 158.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on February 8, 2022 (ECF 1). On April 8, 2022, defendants all filed pre-motion to dismiss letters (ECF 51). On May 18, 2022, Plaintiffs filed the FAC. On June 15, 2022, defendants filed pre-motion to dismiss letters again (ECF 60). The Court held a pre-motion conference on July 15, 2022, but Plaintiffs declined to amend.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs "bear[] the burden of establishing personal jurisdiction" with allegations that are "factually supported" and not merely conclusory. *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (internal quotation marks omitted). To survive a motion to dismiss under Federal Rule 12(b)(6), the complaint must "'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If a plaintiff declines to amend its complaint after receiving a pre-motion to dismiss letter and "[i]f [the] complaint is ultimately dismissed on the grounds set forth in the initial letter, it may be dismissed with prejudice."  Court Individual Rules of Practice R. II.A.

**ARGUMENT**

**I.  Plaintiffs Have Failed to Establish Personal Jurisdiction over BRON Studios Canada or Mr. Gilbert for Any Claims.**

All claims against BRON Studios Canada, incorporated in and with its principal place of business in Vancouver, Canada, and Mr. Gilbert, a resident of Canada, must be dismissed for lack of personal jurisdiction.  FAC ¶¶ 28, 31.  (Contrary to the FAC, *id.* ¶ 31, Mr. Gilbert is not a resident of California, Margulis Decl. ¶ 11.)  Plaintiffs rely on jurisdiction under 18 U.S.C. § 1965, FAC ¶ 39; however, a "court relying on § 1965 may only exert this jurisdictional pull over defendants 'residing in any other district,' not foreign defendants."  *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) (quoting 18 U.S.C. § 1965(b)).  Even if the FAC had alleged domestic service of process or waiver thereof (it does not), jurisdiction under § 1965 would still be lacking, because the FAC does not establish that BRON Studios Canada or Mr. Gilbert have the requisite minimum contacts with the United States.  *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 145 (S.D.N.Y. 2018).

Plaintiffs cannot create jurisdiction by merely asserting that "BRON Studios has significant ties to" or "systematically conducts business in New York," FAC ¶ 30, because "conclusory allegations are not enough to establish personal jurisdiction," *Gmurzynska v. Hutton*, 257 F.Supp.2d 621, 625 (S.D.N.Y.2003) (quoting *DirecTV Latin Am., LLC v. Park 610, LLC,* 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010)).  As to Mr. Gilbert, Plaintiffs' claims are even more conclusory and thus also improper.  *See* FAC ¶¶ 35, 40.  Plaintiffs' claims of "BRON

Studios" acting in New York "through agents," and of Mr. Gilbert "direct[ing] and control[ing]" Hudson, are likewise too conclusory to establish jurisdiction. FAC ¶¶ 30, 45; *see Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 54 (2d Dept. 2016); *see also Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc.*, 983 F. Supp. 173, 178-79 (E.D.N.Y. 1997) (agency allegations insufficient to create personal jurisdiction over alleged principal).

Even if Plaintiffs had offered factual allegations to support these assertions, Plaintiffs do not establish that their claims "arise from" such purported "contacts," *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001), or arise from "BRON Studios[']" alleged offices or employees in the United States, FAC ¶ 30.

Nor can Plaintiffs establish minimum contacts by claiming that "certain non-resident Defendants consented to" jurisdiction in New York in *other agreements* to which Plaintiffs are not parties. FAC ¶ 40; *see id.* ¶ 115. Plaintiffs do not allege that their injuries arise from any such purported agreements involving any BRON Studios Defendant. If Plaintiffs wanted jurisdiction in the United States, let alone New York, they should have bargained for it. *See Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 434 (S.D.N.Y. 2019) (holding that specific jurisdiction is lacking because plaintiffs "have not identified any nexus between BBC's 'television deals' with cable providers and the claims they assert here"). Plaintiffs' vague references to BRON Studios Defendants participating in litigation in New York are also insufficient, as Plaintiffs do not allege that BRON Studios Canada (or any BRON Studios Defendant) *initiated* those lawsuits nor that Plaintiffs' claims arise out of those suits.

For the same reasons, Plaintiffs cannot establish jurisdiction under New York's long-arm statute for Plaintiffs' RICO or common-law claims either. *See* N.Y. C.P.L.R. § 301-302; *see Elsevier, Inc.*, 77 F. Supp. 3d at 343. *First*, New York lacks general jurisdiction under C.P.L.R.

§ 301: Mr. Gilbert is not a New York resident; New York is neither the "place of incorporation" nor "principal place of business" of BRON Studios Canada; and Plaintiff has not shown that "defendant's contacts with New York" are "so continuous and systematic, judged against [its] national and global activities, that it is essentially at home in th[e] state." *Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs.*, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (internal quotation marks omitted); *see Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (local branch offices do not create general jurisdiction over non-resident bank).

*Second*, specific jurisdiction is lacking because none of "plaintiff[s'] claim[s] arises out of or is related to the defendant[s'] contacts with the forum state." *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 CIV. 981 PGG, 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015), *aff'd*, 771 F. App'x 498 (2d Cir. 2019) (internal quotation marks and citation omitted).

## II. Plaintiffs Have Failed to State a RICO Enterprise or Conspiracy Claim.

To plead a civil RICO violation under 18 U.S.C. § 1962(c), Plaintiffs must plausibly allege that they were "injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999). The FAC fails to allege the requisite pattern of racketeering activity and enterprise conduct for any of the BRON Studios Defendants.

### A. Plaintiffs Have Failed to Plead a Pattern of Racketeering Activity.

A pattern of racketeering activity requires, among other elements, "that each defendant committed at least two predicate acts of racketeering activity," and that those acts "reveal continued, or the threat of continued, racketeering activity." *Palatkevich v. Choupak*, 152 F. Supp. 3d 201, 214 (S.D.N.Y. 2016) (internal quotation marks omitted). The FAC's alleged predicate is fraud, so those acts must be pleaded with specificity under Fed. R. Civ. P. 9(b). *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004).

*1. Plaintiffs Have Not Pleaded Any Adequate Wire Fraud Predicates.*

Amongst the litany of almost thirty alleged predicates in the FAC, *only two* claim alleged misstatements by BRON Studios Defendants. Plaintiffs claim as false "[t]he representations made in the Needle Financing Term Sheet . . . signed by Bron Studios (by Cloth) and CWMF" and "made in the Lionsgate Term Sheet . . . signed by Gilbert and Cloth on behalf of BRON Creative, Gilbert on behalf of Bron Studios, and Cloth on behalf of CWMF." FAC ¶ 211(l), (q).

BRON Studios Canada, however, is not a signatory to either term sheet; these purported predicates are therefore irrelevant to it. Margulis Decl., Ex. 1 at 4, Ex. 3 at 4. Likewise, Mr. Gilbert did not sign the Needle agreement, FAC ¶ 107; it cannot serve as a predicate for him.

Plaintiffs have also failed to identify *any* false representations by BRON Studios USA (in the Needle or Lionsgate agreements) or Mr. Gilbert (in the Lionsgate agreement). When alleging that a contractual term is fraudulent, Plaintiffs must identify the specific statement and plead with specificity what made it false. *See Int'l Telecom, Inc. v. Generadora Electrica del Oriente S.A.*, 2002 WL 465291, at *7 (S.D.N.Y. Mar. 27, 2002) (holding that fraud claim fails because it did "not adequately plead why the three monthly notices were fraudulent" and "provides no sources for its conclusory allegations"). The FAC was required to, but does not, explain "precisely what statements were made in" these documents by the BRON Studios USA or Mr. Gilbert, "the contents of such statements and the manner in which they misled the plaintiff[s]." *Stander v. Fin. Clearing & Servs. Corp.*, 718 F. Supp. 1204, 1209 (S.D.N.Y. 1989).

Rather than identify a specific contractual term, Plaintiffs vaguely claim that the term sheets stated that "Plaintiffs' principal and interest would be repaid," FAC ¶ 231(e), but the term sheets contain no such "statements" by BRON Studios USA or Mr. Gilbert. The Needle Term Sheet contains *no representations or warranties* by BRON Studios USA at all; the

representations there are explicitly limited to the "Parties" which are defined solely as BAIF and CWMF. Margulis Decl., Ex. 1 at 1-2. The only term involving BRON Studios USA in the agreement is the "Contingent Compensation" section, and the FAC does not allege that any part of that section is false. *Id.* at 1.

Nor was any repayment promise made in the Lionsgate Term Sheet by BRON Studios USA or Mr. Gilbert (on behalf of BRON Studios USA or BRON Creative USA). Margulis Decl., Ex. 3 at 1-3. Instead, CWMF is identified as the entity in "receipt of" Plaintiffs' funding under that term sheet and as the sole party with "financial obligations" to Plaintiffs, not BRON Studios USA or BRON Creative USA. *Id.* at 1-2. The alleged term sheets therefore cannot constitute predicate acts for any BRON Studios Defendant.

### a. Plaintiffs Cannot Meet Their Burden with Vague Group Pleading.

The FAC's meritless references to the term sheets are in fact the closest Plaintiffs come to alleging any specific representations by any BRON Studios Defendant. Outside these term sheets, Plaintiffs do not identify *any* communications or interactions between the BRON Studios Defendants and Plaintiffs.

Plaintiffs instead rely improperly on allegations that "Defendants" generally committed fraud. *See, e.g.*, FAC ¶ 50. Such group pleading—in a case with *ten-named defendants* and *twenty-one Doe defendants*—is untenable: "when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *Manela v. Gottlieb*, 784 F. Supp. 84, 87 (S.D.N.Y. 1992); *see Stander*, 718 F. Supp. at 1210 ("[W]here there are multiple defendants, as in the present case, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud."); *Bangkok*

*Crafts Corp. v. Capitolio di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 254 (S.D.N.Y. 2004) (Rule 9(b) requires "individuation" as to each defendant "against whom liability is sought").

This rule applies equally to RICO claims based on fraud: "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see Conopco, Inc. v. Wein*, 2007 WL 9818902, at *16 (S.D.N.Y. Aug. 31, 2007).

The FAC's group-pleading therefore cannot establish any predicate fraud. For example, Plaintiffs assert that "recent court submissions by lawyers for CWMF, BRON Studios, and Cloth" "show that . . . Defendants lied to Bayshore." FAC ¶ 96. But the FAC does not state what these "submissions" or prior "lies" are, "identify the speaker[,] or differentiate among those who are alleged to have spoken fraudulently"; those allegations are therefore facially insufficient. *Int'l Telecom, Inc.*, 2002 WL 465291, at *7 (S.D.N.Y. Mar. 27, 2002)

Even Plaintiffs' handful of references to "BRON Studios" are improper: the term groups BRON Studios Canada and BRON Studios USA, FAC ¶ 29, even though the alleged agreements in the FAC refer to specific entities, *e.g., id.* ¶ 90; *see In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 269 n.18 (Bankr. S.D.N.Y. 2008) (noting that the amended complaint "fails to identify which of the Goldman Sachs Entities did what, and violates the rules against group pleading").

   b. *Plaintiffs Conclusory Allegations about the BRON Studios Defendants Cannot Satisfy Rule 9(b).*

Plaintiffs' remaining fraud allegations should be "properly dismissed" because they are conclusory and lack specificity. *See Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006). Plaintiffs allege Hudson acted "in coordination with BRON Studios" and that "BRON [was] necessarily participating as a producer" when other Defendants "presented" an opportunity to Plaintiffs—but along with not specifying what "BRON" means, the FAC does not allege what

this "participati[on]" or "coordination" entailed. FAC ¶¶ 78, 161; *see Stander*, 718 F. Supp. at 1210 ("Rule 9(b) requires that the complaint allege specific facts which support any conclusory allegations . . . .").

Plaintiffs similarly offer no specific support for their claim that Christopher Conover (of Hudson) sent a fraudulent email on behalf of . . . BRON," among other defendants. FAC ¶ 211(e). Plaintiffs merely allege that "Conover sent [the] email to Bayshore attaching a spreadsheet – prepared by CWMF," but this allegation says nothing of BRON Studios USA's or BRON Studios Canada's purported role in the communication. *Id.* ¶ 67. Likewise unsupported is Plaintiffs' assertion that "Hudson was acting on behalf of BRON Studios, CWMF, Gilbert, and Cloth." *Id.* ¶ 47. The BRON Studios Defendants have no alleged ownership interest in Hudson, and only CWMF is alleged to have a commission-based relationship with Hudson, *id.* ¶ 86; accordingly, Plaintiffs' "on behalf of" claim cannot meet Rule 9(b)'s pleading standard.

The FAC's claim that Cloth made a statement to Plaintiffs in May 2020 "on behalf of BRON Studios" similarly fails. FAC ¶ 190. Plaintiffs allege that "Cloth told Bayshore that BRON Studios was about to close on a line of credit with Comerica, which would provide it with tens of millions of dollars" and "Cloth, on behalf of BRON Studios, told Bayshore that this money would be used to pay off Bayshore's loans and others like it." *Id.*; *see id.* ¶ 231(k). Leaving aside the conclusory "on behalf of" allegation, *id.* ¶ 190, the FAC offers no explanation of how this statement of expectation ("about to close on a line of credit" that "would be used to pay off," *id.*) regarding "future outcomes" was "objectively and subjectively false" when made, *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 102 (S.D.N.Y. 2020) (internal quotation marks omitted), *aff'd*, 2022 WL 151302 (2d Cir. Jan. 18, 2022).

This allegation also fails because it concerns statements made almost two years after the alleged contracts were entered into and that could not have induced any out-of-pocket damages, nor reasonable reliance: neither BRON Studios USA nor BRON Studios Canada had borrowed money from Plaintiffs, so there is no reason for Plaintiffs to have relied on statements "on behalf of BRON Studios" about how *CWMF* would repay its alleged debts to Plaintiffs. FAC ¶ 190.

### c. The FAC Demonstrates Lack of Due Diligence and Reasonable Reliance.

Lack of "reasonable reliance" in fact precludes Plaintiffs' fraud allegations against the BRON Studios Defendants generally. *Terra Secs. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011). Plaintiffs here must meet a heightened due diligence bar for "[s]ophisticated" parties, *id.* at 546, because they are professional investors, FAC ¶¶ 10-16.

Plaintiffs' version of events confirms their failure to meet this standard. Plaintiffs entered into the alleged agreements without ever contacting or attempting to contact any BRON Studios Defendant. *See, e.g.*, *id.* ¶¶ 99-104. Plaintiffs rushed into these contracts: Plaintiffs learned of the Needle and Lionsgate opportunities on June 26, 2018; within three days, Bayshore contracted with Hudson to invest in film opportunities. *Id.* ¶¶ 88, 99, 134. Less than a week later, BAIF signed the Needle Term Sheet, and by August 1, Plaintiffs signed the Lionsgate and RTR term sheets—without confirming Hudson's alleged representations. *See id.* ¶¶ 102-104, 138, 142.

In sum, Plaintiffs claim that they entered into the alleged agreements with BRON Studios USA based solely on representations by Hudson and without (a) confirming those representations with any BRON Studios Defendants, nor (b) bargaining to have those alleged representations incorporated into the term sheets. That is not reasonable due diligence.[1]

---

[1] For the avoidance of doubt, the BRON Studios Defendants deny Hudson's allegations of wrongdoing concerning them in Hudson's motion to dismiss. *See* ECF 70 at 3.

Plaintiffs' due diligence failures do not stop there. Plaintiffs claim that in May 2018 Hudson sent them a presentation that "le[ft] no doubt that Defendants intended to dupe unsuspecting investors," and yet despite this alleged red flag, Plaintiffs proceeded to transact with Hudson. FAC ¶ 78. Plaintiffs also insist that the DeRoyce Capital letter is fraudulent because its "prestigious London address is merely a shared office space, and the address used by [it] in the United States is the same as BRON Studios' address in Los Angeles," but Plaintiffs fail to explain why those facts did not raise suspicions at the time. *Id.* ¶ 194.

### 2. *Plaintiffs Have Failed to Establish Continuity.*

Along with failing to show any predicate acts, Plaintiffs have also not established the requisite pattern of those acts through "either closed-ended or open-ended" continuity. *Casio Computer Co., Ltd. v. Sayo*, 2000 WL 1877516, at *11 (S.D.N.Y. Oct. 13, 2000) (internal quotation marks omitted). Closed-ended continuity requires acts that "extend[] over a substantial period of time." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989). Plaintiffs do not allege any interactions with BRON Studios Defendants before the Needle agreement, dated July 5, 2018, or after the Lionsgate agreement, August 1, 2018—three weeks is insubstantial under any measure.

These allegations also preclude open-ended continuity, because they show that any predicate acts by the BRON Studios Defendants were "limited" and "inherently terminable," and therefore not a "threat of continued racketeering activity." *Sayo*, 2000 WL 1877516, at *13; *see also Cofacredit, S.A.*, 187 F.3d at 244; *Mead v. Schaub*, 757 F. Supp. 319, 323 (S.D.N.Y. 1991).

Plaintiffs cannot conjure a threat of continued racketeering by referring to the *Preserver, LP v. Creative Wealth Media Finance Corp.*, No. 21-CV-2456 (JPO) (S.D.N.Y. 2021), lawsuit, FAC ¶ 219, as no BRON Studios Defendants are parties to it. Nor can Plaintiffs establish open-

ended continuity with vague allegations that BRON Studios Defendants are producing movies or seeking investors. FAC ¶¶ 220-21. The FAC alleges that the BRON Studios Defendants are in the business of making major motion pictures, that they make movies independent of the other defendants, and that not all of their films with the other defendants result in losses to third-party investors. *Id.* ¶¶ 79-80. Thus, nothing in Plaintiffs' claim that the BRON Studios Defendants plan on continuing to make films "implies a threat of continued criminal activity." *Allen v. New World Coffee, Inc.*, 2001 WL 293683, at *6 (S.D.N.Y. 2001) (internal quotation marks omitted).

## B. Plaintiffs Have Failed to Plead Enterprise and Common Purpose.

Despite failing to establish the basic fraud predicates, Plaintiffs heap fantasy on top of fantasy by claiming that the BRON Studios Defendants were conducting a RICO enterprise. Plaintiffs' inability to plead this element provides an independent ground for dismissal, as the FAC does not plausibly allege that the BRON Studios Defendants "share[d] a common purpose" with the other defendants "to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 174 (internal quotation marks omitted). Each of the actions allegedly taken by BRON Studio Defendants is readily explained by their business as movie producers, a business that the FAC concedes is legitimate. *See* FAC ¶¶ 79-80. Plaintiffs' conclusory allegations of common purpose are therefore insufficient. *See Fisk*, 424 F. Supp. 2d at 677.

## C. Plaintiffs Have Failed to Plead a RICO Conspiracy.

Plaintiffs' RICO conspiracy claims are based on the same insufficient allegations of a RICO "Enterprise" underlying their § 1962 claim. FAC ¶ 225. "[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims," the failure of the latter requires "dismissal of the RICO conspiracy claims." *First Cap. Asset Mgmt., Inc.*, 385 F.3d at 164; *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).

For example, in *Zamora v. FIT Int'l Grp. Corp.*, a RICO conspiracy claim was properly dismissed against a defendant because it was based on "the same factual predicate" as the failed "substantive RICO" claim against that defendant. 834 F. App'x 622, 626 (2d Cir. 2020); *see Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 321 (S.D.N.Y. 2009) (dismissing RICO conspiracy claim against one defendant where plaintiff "ha[d] not stated a substantive RICO claim against" him).

Even leaving aside the failed § 1962 claim, the FAC fails to plead conspiracy plausibly. "To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A.*, 187 F.3d at 244 (internal quotation marks omitted). Here too, Plaintiffs resort to conclusory recitations of the legal standard rather than factual allegations: "Defendants . . . knowingly agreed and conspired to conduct or participate in" the RICO enterprise. FAC ¶ 225; *see id.* ¶ 227.

By focusing on allegations that parrot legal standards (rather than facts), Plaintiffs fail to explain why "major" movie studios that, according to the FAC, do not need the other defendants to find investors or to make financially successful films, FAC ¶¶ 79-80, would risk their reputation and ability to raise film financing, by engaging in a scheme to defraud. Nor is there any plausible explanation of how BRON Studios Defendants would benefit from CWMF failing to repay its alleged debts to Plaintiffs, further underlining the lack of a plausible conspiracy.

### III. Plaintiffs Have Not Established Personal Jurisdiction over BRON Studios USA for the Remaining Claims.

BRON Studios USA is a Nevada corporation with a principal place of business in California. FAC ¶¶ 27. Absent a basis for jurisdiction in New York, the common law claims against it must be dismissed. Because Plaintiffs have failed to state a civil RICO claim against the BRON Studios Defendants, Plaintiffs cannot rely on supplemental jurisdiction under 18

U.S.C. § 1965 for the state law claims. *See Hitachi Data Sys. Credit Corp.*, 331 F. Supp. 3d at 145-46 ("If a civil RICO claim is dismissed, that statute's authorization of a national personal jurisdiction analysis can no longer be relied upon."); *Elsevier Inc.*, 692 F. Supp. 2d at 315 ("[T]he Court will not attempt to exercise supplemental jurisdiction over the state law claims in the absence of the RICO claim.").

Nor can Plaintiffs rely on New York's long-arm statute. *See* N.Y. C.P.L.R. § 301-302; Part I, *supra*. Plaintiffs' allegations of BRON Studios USA's contacts with New York are identical to Plaintiffs' jurisdictional allegations about BRON Studios Canada, *e.g.,* FAC ¶ 30. Plaintiffs' invocation of long-arm jurisdiction against BRON Studios USA therefore fails for the same reasons it failed against BRON Studios Canada.

First, because BRON Studios USA has a principal place of business outside New York, Plaintiffs' conclusory allegations of contacts with New York are insufficient to create general jurisdiction. *See* Part I, *supra*.

Second, because Plaintiffs' claims are not alleged to arise from or relate to any contacts with New York, Plaintiffs cannot establish specific jurisdiction. *See id.* For example, even if BRON Studios USA has an office in New York, no activity in the FAC is alleged to have taken place there. *See* FAC ¶¶ 30. Accordingly, the common law claims against BRON Studios USA should be dismissed for lack of personal jurisdiction.

In the alternative, the BRON Studios Defendants refer to and adopt the Creative Defendants' forum non conveniens arguments for dismissal of the FAC.

## IV. Plaintiffs Have Failed to State a Claim for Fraud or Aiding and Abetting Fraud.

Plaintiffs' fraud claims against the BRON Studios Defendants fail for the same reasons as Plaintiffs' claims of predicate wire fraud acts. *See* Part II.A, *supra*. Perhaps realizing this deficiency, the FAC adds a claim for aiding and abetting fraud against each BRON Studios

Defendant.  *See* FAC ¶ 240.  But Plaintiffs have not alleged with specificity "defendant[s']" knowledge of the fraud; and [] that the defendant[s] provided substantial assistance to advance the fraud's commission."  *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 186-87 (S.D.N.Y. 2009) (internal quotation marks omitted); *see Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 344 (S.D.N.Y. 2013) (hereinafter "*Iowa*").

## A. Aiding and Abetting Requires Knowledge to Be Pleaded with Specificity, But Plaintiffs Have Not Done So.

To plead aiding and abetting fraud, Plaintiffs must "allege *actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).*"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (emphasis added); *accord ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 842 F. App'x 705, 706 (2d Cir. 2021); *Iowa*, 919 F. Supp. 2d at 344-45.

Plaintiffs cannot meet this burden with general allegations that BRON Studios USA, BRON Studios Canada, or Mr. Gilbert "had knowledge of the fraud," FAC ¶ 237, instead plaintiffs were required "to plead facts with the requisite particularity to support that claim." *Lerner*, 459 F.3d at 293; *see ICD Cap., LLC*, 842 F. App'x at 706 (holding that "generalized allegations" are insufficient).  Plaintiffs offer no such allegations.  Plaintiffs also cannot rest on vague claims of "BRON Studios['] "participation" or "coordination" with other defendants, FAC ¶¶ 63, 78, because "none of these facts indicate that [defendant] was actually aware that the [statements] were false."  *Abu Dhabi*, 651 F. Supp. 2d at 186-87.

Claims of false representations in the Needle and Lionsgate term sheets do not suffice either.  FAC ¶ 211 (l), (q).  *First,* BRON Studios Canada is not a signatory to these agreements, nor is its knowledge of those agreements otherwise alleged.  *Second*, Plaintiffs have failed to

show that BRON Studios USA or Mr. Gilbert "knew that the" CWMF "would not honor" those agreements. *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 630-31 (2d Cir. 2020).

Finally, the existence of a business relationship with other defendants is insufficient to establish actual knowledge. *See, e.g.*, *ICD Cap, LLC*, 842 F. App'x at 706 (defendant's "status as chief operating officer" did not create actual knowledge). Such relationships, even when combined with "[a]llegations that [a defendant] ***suspected fraudulent activity*** . . . do not raise an inference of actual knowledge." *Lerner*, 459 F.3d at 293 (emphasis added) (quoting *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *1, 9 (E.D.NY. Sept. 20, 2000)); *see Ryan*, 2000 WL 1375265, at *8 (no "actual knowledge" even where bank was aware of "red flags"). The FAC does not allege such red flags and even if it had, "[c]onstructive knowledge is insufficient" to "constitute the knowledge element of aiding-and-abetting." *Heinert*, 835 F. App'x at 630.

### B. Plaintiffs Have Failed to Plead Substantial Assistance with Specificity.

Plaintiffs' aiding claim also fails for the independent reason that the FAC lacks specific allegations of "substantial assistance to [the other defendants] in perpetrating, or concealing, the fraudulent scheme." *Iowa*, 919 F. Supp. 2d at 344 (internal quotation marks omitted).

Just as the bare allegations of "participation and approval" in *Abu Dhabi* were insufficient to show "that BoNY undertook substantial steps to assist" the fraud, 651 F. Supp. 2d at 186-87, so too are Plaintiffs' generic allegations that the BRON Studios Defendants participated in or were "integral" to the fraud, FAC ¶ 238.[2] "Rule 9(b) requires Plaintiffs to set forth ***the what, when, where, and how*** of [defendants'] alleged . . . affirmative assistance . . . ." *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 2020 WL 815733, at *7 n.2 (S.D.N.Y. Feb. 19,

---

[2] The notion that BRON Studios Canada is integral is also contradicted by the Bayshore sourcing agreement, which refers specifically to "BRON Studios USA" films. FAC ¶ 90.

2020) (emphasis added) (quoting *Pilkington North America, Inc. v. Mitsui Sumitomo Insurance CO. of America*, 2019 WL 5595042, at \*15, 420 F. Supp. 3d 123, 140 (S.D.N.Y. 2019)).

Plaintiffs' only attempt at alleging specifics here—"that Gilbert signed several of the agreements that resulted from the Count III Defendants' fraud, including those related to the Lionsgate slate"—falls short of Rule 9(b)'s requirements.  FAC ¶ 239.  This allegation is irrelevant to BRON Studios Canada—Mr. Gilbert is alleged to have signed the term sheets on behalf of BRON Studios USA and BRON Creative USA.  *Id.* ¶ 145.  Plaintiffs also offer no explanation of how Mr. Gilbert's or BRON Studios USA's presence on these agreements constitutes intentional substantial assistance as opposed to merely carrying on the business of producing movies in the ordinary course.

## V.  Plaintiffs Have Failed to State a Claim for Breach of Contract or Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiffs face an insurmountable hurdle in claiming that BRON Studios Canada and BRON Studios USA breached the alleged Needle (Counts 5, 8), Lionsgate (Counts 6, 9), and RTR (Count 6, 9) term sheets: Plaintiffs' claims are contradicted by the term sheets themselves.

### A.  BRON Studios Canada Is Not a Party to the Allegedly Breached Agreements.

Plaintiffs' breach claims are group-pleaded against "BRON Studios" generally, *see, e.g.*, FAC ¶¶ 241-250; however, BRON Studios Canada is not a party to *any of the allegedly breached agreements*.  *See* Margulis Decl. Exs. 1, 3-4.  The breach and good-faith-and-fair-dealing claims must therefore be dismissed as to BRON Studios Canada.

### B.  Because the Term Sheets Do Not Obligate BRON Studios USA to Repay Any Money or Secure Any Collateral, They Foreclose Plaintiffs' Theory of Breach.

Even when applied to BRON Studios USA, Plaintiffs' breach claims fail.  Plaintiffs insist that BRON Studios USA breached the Needle, Lionsgate, and RTR term sheets by "failing to

repay money owed," and "failing to secure [plaintiffs'] collateral," but none of those term sheets purport to place those obligations on BRON Studios USA.  FAC ¶ 244; *see id.* ¶ 249.

BRON Studios USA is not the borrower under any of the term sheets and therefore could not be under any obligation to "repay money owed."  *Id.*  Under the Needle, Lionsgate, and RTR term sheets, CWMF is the borrower and only it, not BRON Studios USA, is listed as having "financial obligations" to perform.  Margulis Decl., Ex. 1 at 1-2, Ex. 3 at 1-2, Ex. 4 at 1-2; *see* Ex. 3 at 1 (explaining that CWMF will be in "receipt of funding" from BAIF).  The Needle Term Sheet refers to "collateral" but places those "financial obligations" on CWMF.  Margulis Decl., Ex. 1 at 1-2.  The Lionsgate and RTR term sheets do not even mention security or collateral.

In fact, the alleged Lionsgate and RTR term sheets *do not impose any performance obligations* on BRON Studios USA; they merely memorialized its place in the "Facilitation Fees" and "Contingent Compensation" waterfalls.  Margulis Decl., Ex. 3 at 1-2; Ex. 4 at 1-2.  As to the Needle Term Sheet, to the extent Plaintiffs claim that BRON Studios USA is obligated to pay "Contingent Compensation" under it, the required contingency for that obligation to arise— "repayment in full to [BAIF]"—has not been met.  Margulis Decl., Ex. 1 at 1; *see* FAC ¶ 131.

### C.  Plaintiffs Have Failed to Plead Breach of the Covenant of Good Faith and Fair Dealing, Let Alone a Breach That Would Support Punitive Damages.

A good faith and fair dealing claim may not duplicate a breach of contract claim. *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017).  Here, Plaintiffs do exactly that: alleging that the covenant was breached by "failing to repay money owed" and "by failing to secure [] collateral," the same allegations underlying Plaintiffs' breach claims. *Compare* FAC ¶¶ 258, 265, *with id.* ¶¶ 244, 249.  For this reason alone, the good-faith-and-fair-dealing claims (which are not pleaded in the alternative) must be dismissed.

The claims also fail on the merits because they seek to impose obligations on BRON Studios USA inconsistent with the term sheets. *Hadami, S.A.*, 272 F. Supp. 3d at 598. As noted immediately above, BRON Studios USA was not tasked with repaying money or securing collateral under any of the term sheets. Plaintiffs understood that if they had any issue with repayment or collateral, they should seek relief from CWMF, *not* BRON Studios USA.

Finally, Plaintiffs cannot seek punitive damages here as Plaintiffs have not established that the purported breaches were an "egregious," "independent tort," nor that they were "part of a pattern directed at the public generally." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995). Against this standard, Plaintiffs' mere "epithets" of "malice, of oppression," and of fraud "are of no avail.*" Rich v. N.Y. Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 394 (1882).

## VI. Plaintiffs' Unjust Enrichment Claim is Both Duplicative and Without Merit.

Plaintiffs' unjust enrichment claim fails to heed the two basic elements required by the New York Court of Appeals: (1) "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"; and (2) there must be "circumstances creat[ing] an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Despite "unjust enrichment" requiring "the absence of an actual agreement between the parties," Plaintiffs do not allege any relationship with any BRON Studios Defendants outside of the Needle, Lionsgate, and RTR term sheets. *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009)). Plaintiffs' unjust enrichment claims—which *are not* pleaded in the alternative—are therefore duplicative.

The unjust enrichment claims also fail because Plaintiffs have not shown that any BRON Studios Defendant "was enriched, [] at [Plaintiffs'] expense," under circumstances that are

"against equity and good conscience." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (brackets in original) (quoting *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481 (2d Dept.2004)).

Defendants BRON Studios Canada and Mr. Gilbert are not specifically alleged to have *received* anything from Plaintiffs, directly or indirectly; therefore, the unjust enrichment claims fail out of the gate. Likewise, Plaintiffs cannot assert that BRON Studios USA was enriched at Plaintiffs' expense. BAIF allegedly loaned money to CWMF under the Needle Term Sheet to "participate in the financing" of Needle in a Timestack, LLC's production of Needle. FAC ¶¶ 104, 109-110. Plaintiffs do not explain how BRON Studios USA received any Plaintiff funds under the Needle Term Sheet, and while Plaintiffs claim that "BRON was to receive $320,000" "out of Plaintiffs' loan" in the Lionsgate and RTR term sheets, FAC ¶ 144, those documents state that the "$320,000.00" is to be paid "by Lionsgates from the Production Budget" as "payment for" BRON Studios USA's "investment administration services." Margulis Decl., Ex. 3 at 1, Ex. 4 at 1. Plaintiffs have not alleged how any receipt of such payment under the term sheets would constitute unjust enrichment, particularly when Plaintiffs already are bringing a contract claim against the borrowers under the term sheets.

## VII. Plaintiffs Have Failed to Plead the Basis for Any Fiduciary Duties and Therefore Their Claim for an Accounting Must be Dismissed.

Plaintiffs' accounting claim fails for lack of the requisite fiduciary relationship with BRON Studios Canada or BRON Studios USA. *See Vitale v. Steinberg*, 307 A.D.2d 107, 110 (1st Dep't 2003) ("Since there was no fiduciary duty, the claims for . . . an accounting . . . should have been dismissed."). Pleading "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship." *Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017) (quoting *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 21 (2d Dep't 2008)).

There must be "'special circumstances that could have transformed the parties' business relationship to a fiduciary one, such as control by one party of the other for the good of the other.'" *Id.* (quoting *L. Magarian & Co. v. Timberland Co.*, 245 A.D.2d 69, 70 (1st Dep't 1997)).

Plaintiffs do not plead ***any*** relationship with BRON Studios Canada; therefore, the accounting claim must be dismissed as to it. With BRON Studios USA, Plaintiffs do not plead anything more than a "conventional business relationship" pursuant to the Needle, Lionsgate, and RTR term sheets.[3] Under the alleged Lionsgate and RTR term sheets, BRON Studios USA is merely a passive participant in the agreements' waterfalls; therefore, no special circumstances are present. *See* Margulis Decl., Ex. 3 at 1-2, Ex. 4 at 1-2.

Even if the Needle Term Sheet is construed as imposing an obligation on BRON Studios USA "to share profits" with BAIF, that term, as a matter of law, is not sufficient to "create[] a fiduciary relationship." *Eden v. St. Luke's-Roosevelt Hosp. Ctr.*, 96 A.D.3d 614, 615 (1st Dep't 2012); *accord First Equity Realty v. Harmony Grp., II*, 68 Misc. 3d 1216(A) at *8 (N.Y. Sup. Ct., N.Y. Cnty. 2020) (holding that plaintiff's "right to receive specified profits . . . does not create an inherently fiduciary relationship); *Koether v. Sherry*, 40 Misc. 3d 1237(A) at *10 (N.Y. Sup. Ct., Kings Cnty. 2013) ("The profit sharing agreement itself does not give rise to a fiduciary obligation."). Thus, even if BAIF were "dependent upon [BRON Studios USA] to calculate the profits and benefits," that does "not transform the relationship . . . into a fiduciary one." *Vitale*, 307 A.D.2d at 109. Plaintiffs' accounting claim must be dismissed.

## CONCLUSION

The Court should dismiss the FAC with prejudice as to BRON Studios USA, BRON Studios Canada, and Mr. Gilbert. *See* Individual Rules of Practice II.A.

---

[3] No BRON Studios Defendant is alleged to be party to the Nightingale term sheet. FAC ¶ 172.

Dated: August 26, 2022
New York, New York

/s/ Joshua I. Schiller
Joshua I. Schiller
Benjamin Margulis
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
jischiller@bsfllp.com
bmargulis@bsfllp.com

*Counsel for Defendants BRON Studios, Inc.,
BRON Studios USA, Inc., and Aaron L.
Gilbert*