# EXHIBIT O



William R. Fried
**Partner**
Phone: 212-592-1684
Fax: 212-545-2382
wfried@herrick.com

December 8, 2021

**VIA ECF**
Hon. Cathy Seibel
The Hon. Charles L. Brieant Jr., Federal Building and Courthouse
300 Quarropas St.
White Plains, New York 10601-4150

     Re:    *Hudson Private LP v. Bron Studios USA, Inc., et al.*, No. 7:21-cv-08259-CS

Dear Judge Seibel:

On behalf of defendants Creative Wealth Media Finance Corp. ("**CW**"), Bron Creative USA, Corp. ("**Bron Creative**"), and Jason Cloth ("**Cloth**") (collectively "**Creative Defendants**"), we write pursuant to Rule 2.A of Your Honor's Individual Practices to request a pre-motion conference in connection with the Creative Defendants' proposed motion: (i) compelling arbitration of all claims against the Creative Defendants; or (ii) in the alternative, dismissing various claims.

**Background**. On October 6, 2021, Plaintiff Hudson Private LP ("**Hudson**") filed a complaint, alleging that Defendants owed Hudson "millions of dollars, in connection with [Hudson's] financing of film and/or television productions," namely, Fonzo/Capone, Greyhound, Bombshell, and Harry Haft (the "**Complaint Films**"). What the complaint failed to mention is that Hudson's financings were part and parcel of a significantly larger transaction, whereby CW made loans to Hudson aggregating $17,906,826.86 ("**Library Loans**"), and in turn Hudson agreed to participate in the financing of films, where CW brokered the financing and co-defendant Bron Studios USA, Inc. ("**Bron Studios**"), a film production company, produced the films. The commissions paid by Hudson to CW on each film financing were to be applied to the repayment of the Library Loans.

The Library Loans are memorialized in three Library Agreements, each of which contain the following alternative dispute resolution ("**ADR**") provision:

> Disputes and matters of interpretation concerning this Term Sheet shall be resolved first by mediation which mediation shall take place within ten (10) days of notice by one of us to the other of our intention to utilize this provision and if such mediation is not successful, such dispute shall be referred to a final and binding determination by a single arbitrator appointed from the panel of the Judicial Arbitration & Mediation Services, Inc., appointed pursuant to the provisions of the JAMS Comprehensive Arbitration Rules & Procedures.

Hudson's affiliate and/or alter ego, Hudson Private Corp. ("**Hudson PC**"), and the principal of the two Hudson entities, Christopher Conover ("**Conover**"), also executed with CW and its affiliates an Executive Producer Agreement ("**EP Agreement**"), which contains an ADR provision as well:[1]

> Any and all controversies, claims or disputes arising out of related to this Agreement shall be submitted to final and binding arbitration. The arbitration shall be initiated and conducted according

---

[1] The Library Agreements and the EP Agreement include a confidentiality clause. At the Court's request, the Creative Defendants will submit the agreements in camera or file them under seal.

**HERRICK, FEINSTEIN LLP** • Two Park Avenue • New York, NY 10016 • Phone: 212.592.1400 • Fax: 212.592.1500

Case 7:21-cv-08259-CS   Document 19   Filed 12/08/21   Page 2 of 4



December 8, 2021
Page 2

to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims over $250,000) Arbitration Rules and Procedures, except as modified herein, including the Optional Appeal Procedure ("JAMS") in effect at the time the request for arbitration is made . . . .

**The Motion to Compel Arbitration**. The Creative Defendants seek leave to move to compel arbitration of Hudson's claims. The Federal Arbitration Act ("**FAA**") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Policy Admin. Solutions, Inc. v. QBE Hldgs., Inc.*, 2019 WL 4126464 (S.D.N.Y. 2019) (Seibel, J.). To determine whether this action is arbitrable under the FAA, four inquiries must be resolved, whether: (1) the parties agreed to arbitrate; (2) the scope of the arbitration agreement extends to the action; (3) Congress intended the claims to be arbitrable; and (4) the court should stay the balance of the proceedings pending arbitration. *Id.* The scope of the arbitration agreement is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *See Henry Schein, Inc. v. Archer and White Sales Inc.*, 139 S. Ct. 524, 530 (2019). Where the arbitration clause is broad, incorporation of arbitration rules that delegate arbitrability to the arbitrator serves as "clear and unmistakable" evidence of the parties' intent to delegate such issues. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021).[2]

*The Library Agreements*: Pursuant to the Library Agreements, CW and Hudson agreed to arbitrate. The Library Agreements include a broad ADR clause, requiring arbitration of "[d]isputes and matters of interpretation concerning this Term Sheet…." *See, e.g.*, *Eastern Cleaning Service, Inc. v. Service Employees International Union, Local No. 200*, No. 79 Civ. 554, 555, 1980 WL 2059, at *5 (S.D.N.Y. Jan. 31, 1980). The breadth of the Library Agreements' ADR clause creates a presumption of arbitrability. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

Because Hudson's claims regarding its financing of the Complaint Films are inextricably intertwined with Hudson's obligations under the Library Agreements, Hudson must be compelled to arbitrate this dispute. Hudson is an asset manager that invests its clients' capital in, among other things, film financing. In or around 2018, Hudson required capital due to losses in its film financing investments. Pursuant to three term sheets, dated January 8, 2018, April 9, 2018, and December 31, 2019, respectively, CW made the Library Loans to Hudson aggregating $17,906,826.86 (collectively, "**Library Agreements**"). Purportedly for tax and regulatory reasons, Hudson insisted that the Library Loans be structured as a purchase of Hudson's existing interests in various motion pictures (none expected to yield any return), with the understanding that Hudson would finance Bron Studios' films and the commissions paid by Hudson to CW on these film

---

[2] Cloth and Bron Creative seek to compel arbitration for numerous reasons. *See Stechler v. Sidley, Austin, Brown & Wood, LLP*, 382 F.Supp.2d 580, 591 (S.D.N.Y. 2005) (disclosed agent of signatory can utilize arbitration clause); *JLM Indus. v. Stolt-Nielsen*, 387 F.3d 163, 177 (2d Cir. 2004) (under principles of estoppel, a nonsignatory to an arbitration agreement may compel a signatory to arbitrate a dispute). To the extent this Court finds that certain claims are non-arbitrable, it should stay litigation of those claims pending arbitration. *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489–90 (S.D.N.Y. 2011). Not only does the FAA "mandate a stay of litigation if 'the issue involved is referable to arbitration,' but 'enforcing an arbitration agreement and staying the litigation pending arbitration is a more efficient way of resolving all the interrelated disputes between'" the parties. *HG Estate, LLC v. Corporacion Durango S.A. De de C.V.*, 271 F. Supp. 2d 587, 596 (S.D.N.Y. 2003).

HF 14137125v.8



December 8, 2021
Page 3

financings, which included the Complaint Films, would be used to repay the Library Loans. In connection with their motion, the Creative Defendants will submit an affidavit from Cloth, with corroborating e-mails, establishing that: (a) the Library Agreements were, in fact, loans; (b) the parties had a collateral agreement that Hudson would participate in the financing of films produced by Bron Studios; and (c) the financing commissions payable to CW as broker were to be applied to the repayment of the Library Loans.[3] As a result, Hudson must be compelled to arbitrate as required by the Library Agreements.[4]

*The EP Agreement*: Pursuant to the EP Agreement, Hudson PC, CW, and CW's affiliates agreed to arbitrate. Hudson PC acted as Hudson's alter-ego and/or agent in connection with the EP Agreement, as evidenced by, among other things: (1) Hudson and Hudson PC shared common management; (2) Chris Conover was the principal of both entities; (3) both entities shared a common office; and (4) the demand letter sent in advance of this litigation was sent by counsel representing both entities, without making a distinction between the two. *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).[5]

The EP Agreement's ADR clause is broad and incorporates JAMS arbitration rules, which require *arbitrators* to determine any issues related to arbitrability. In *Policy Admin. Solutions*, this Court found that the incorporation of AAA Rules, combined with the agreement's broad arbitration provision, which is substantially the same as the EP Agreement, required the issue of arbitrability to be decided by the arbitrator because such is considered "clear and unmistakable" intent by the parties to have arbitrators decide issues of scope. *See Policy Admin.*, 2019 WL 4126464, at *5. Thus, this Court must compel Hudson to arbitrate this dispute, and any issues regarding arbitrability must be resolved by the arbitrator.

**The Proposed Motion to Dismiss**. If this Court holds that Hudson's clear and unambiguous agreement to arbitrate claims in this dispute should not be enforced, Creative Defendants will move, under Federal Rule of Civil Procedure 12, to dismiss certain claims. Hudson not only misinterprets the relevant agreements and improperly group pleads all Defendants, but fails to assert viable causes of action. Specifically, Hudson's causes of action for an accounting must be dismissed because: (a) Hudson fails to demonstrate that it has no other adequate remedy at law; and (b) Hudson cannot establish a fiduciary relationship between the parties. The cause of action for conversion must be dismissed because a mere right to payment cannot be the basis for conversion, and the claim is duplicative of the breach of contract claims. The cause of action for "alter ego" must be dismissed because no such cause of action exists under New York law.[6]

---

[3] *Gem Corrugated Box Corp. v. Nat'l Kraft Container Corp.*, 427 F.2d 499, 503 (2d Cir. 1970) (noting that parol evidence can be considered, despite a merger clause, where there was an oral, collateral agreement between the parties with the following conditions: "(1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; and (3) it must be one that parties would not ordinarily be expected to embody in writing . . ."); *Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 451–52 (2d Cir. 1977).

[4] The Library Agreements and the financing agreements contain confidentiality clauses, further favoring arbitration.

[5] At a minimum, these connections warrant discovery regarding the relationship between the two. *See Glob. Commodities Grp., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 13 CIV. 2063 SAS, 2013 WL 4713547, at *6 (S.D.N.Y. Aug. 29, 2013) (staying arbitration pending discovery as to alter ego status).

[6] *See Krause v. Forex Exch. Mkt., Inc.*, 12 Misc. 3d 1192(A) (Sup. Ct. 2006); *Arbeeny v. Kennedy Exec. Search, Inc.*, 31 Misc. 3d 494, 503 (Sup. Ct. 2011). *Shapsis v. Kogan*, No. 38418/07, 2011 WL 61727 (Sup. Ct. 2011); *Peters*



December 8, 2021
Page 4

                              Respectfully submitted,

                              /s/ William R. Fried

cc:    All Counsel of Record (via ECF)

---

*Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883-84 (1st Dep't 1982); *Selinger Enters. v. Cassuto*, 50 A.D.3d 766, 768 (2d Dep't 2008); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 478, n.10 (S.D.N.Y. 2009).

HF 14137125v.8