# EXHIBIT P



December 8, 2021

**VIA ECF**
Hon. Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

   Re: *Hudson Private LP v. Bron Studios USA, Inc., et al.*, No. 7:21-cv-08259-CS

Dear Judge Seibel:

   We represent Defendant Bron Studios USA, Inc. ("Bron Studios") and we write pursuant to Rule 2.A of Your Honor's Individual Practices to request a pre-motion conference in connection with a proposed motion for an order to compel arbitration of all claims against Bron Studios.

   On October 6, 2021, Hudson Private LP ("Plaintiff") filed suit against Bron Studios, Bron Creative USA, Corp. ("Bron Creative"), Creative Wealth Media Finance Corp. ("Creative Wealth"), and Jason Cloth ("Mr. Cloth") (collectively, "Defendants") to collect money that Plaintiff alleges is owed for financing Defendants' film and/or television projects.

   Starting in 2018, Plaintiff and Creative Wealth entered into several Term Sheets for the Purchase Facility for Motion Picture Library ("Library Agreements"), in which Creative Wealth made loans to Plaintiff. Plaintiff required the loans as a result of significant losses it had incurred as part of prior, unrelated, film financing deals. Plaintiff agreed to repay these loans from the commissions payable to Creative Wealth earned from Plaintiff's financing of films by Bron Creative and Bron Studios. Since the parties recognized the importance of arbitration, the agreements also contained mandatory arbitration clauses.

   The Library Agreements contain a broad "Governing Law and Dispute Resolution" provision that clearly indicates that disputes relating thereto would be arbitrated. Specifically, Plaintiff and Creative Wealth agreed as follows:

> Disputes and matters of interpretation concerning this Term Sheet shall be resolved first by mediation . . . and if such mediation is not successful, such dispute shall be referred to a final and binding determination by a single arbitrator appointed from the panel of the Judicial Arbitration & Mediation Services, Inc., appointed pursuant to the provisions [of] the JAMS Comprehensive Arbitration Rules & Procedures.

   Additionally, Plaintiff's affiliate and alter-ego, Hudson Private Corp., entered into an Executive Producer Agreement with Creative Wealth ("EP Agreement"). The EP Agreement is related to Bombshell, one of the films at issue in Plaintiff's lawsuit and which forms the basis for two of Plaintiff's nine causes of action (*see, e.g.*, Complaint ¶¶ 54-66). The EP Agreement was made between Plaintiff's alter-ego and Creative Wealth "*and its affiliates*," and broadly provides, pertinently, that:



> Any and all controversies, claims or disputes arising out of or related to this Agreement shall be submitted to final and binding arbitration. The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims over $250,000) Arbitration Rules and Procedures, except as modified herein, including the Optional Appeal Procedure ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules").[1]

As such, Defendants Creative Wealth, Bron Creative, and Mr. Cloth[2] ("Creative Defendants") are seeking leave to move to compel arbitration of Hudson's claims against them pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and by letter dated December 8, 2021, Creative Defendants requested a pre-motion conference in connection with their proposed motion. Plaintiff and Creative Wealth selected to resolve any disputes in arbitration. Because the arbitration clauses unequivocally mandate arbitration, Plaintiff must pursue its claims before an arbitrator, not this Court. To the extent Plaintiff raises questions about the arbitrability of its claims, that, too, is the province of the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) (noting that under the FAA and Supreme Court precedent, arbitrability is determined by the arbitrator). This is especially so where, as here, "the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021) (citing cases).

Though Bron Studios is not a party to any arbitration agreement, the claims against it should nonetheless be arbitrated. While Bron Studios vehemently disputes Plaintiff's allegations in this case, it is nonetheless associated with Creative Wealth through its relationship with Bron Creative. Additionally, the claims asserted against Bron Studios are related to and cannot be disentangled from the subject matter covered in the Library Agreement and the Executive Producer Agreement. Plaintiff, on multiple occasions, makes claims against "Defendants" as a singular entity. For example, in one of the Bombshell-related claims in particular (the Sixth Cause of Action), Plaintiff alleges that "Defendants" (without differentiation) "have improperly refused Hudson LP's duly issued demands for true and full information concerning the financial affairs of the production." (Complaint ¶ 116.) Moreover, Plaintiff also claims that "Bron" (which Plaintiff defines as being both Bron Studios and Bron Creative) had a "wholly-owned subsidiary of Bron" acting as "either the underlying production company borrower or was the co-producer of the production." (Complaint ¶ 21.)

Accordingly, Bron Studios joins Creative Defendants' letter and additionally submits this letter seeking leave of the Court to move to compel arbitration of all claims against it based on

---

[1] As the Creative Defendants explain in their own letter, the Library Agreements and the EP Agreement include a confidentiality clause, so they are not attached to this letter. Bron Studios agrees with the Creative Defendants' offer to provide the agreements for in camera review.

[2] Mr. Cloth was not a signatory to any agreement but seeks to take part in arbitration as a disclosed agent of Creative Wealth, among other reasons. *See* Pre-Motion Letter of Defs. Creative Wealth, Bron Creative, and Mr. Cloth, Dec. 8, 2021.



equitable estoppel. Under equitable estoppel, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . ., and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (internal citation and quotation marks omitted). Courts will compel a signatory to arbitrate with a non-signatory where there exists "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.* at 144. The determination of whether equitable estoppel applies is a fact-specific inquiry. *See id.*

Plaintiff agreed that any claims it brought relating to the EP Agreement and concerning the Library Agreements would be brought in arbitration. Plaintiff cannot now choose to file some subset of such claims in federal court simply because it has decided to assert them against Bron Studios, too. Plaintiff therefore should be equitably estopped from refusing to arbitrate its claims against Bron Studios. As will be discussed, with the Court's approval, in Bron Studio's proposed Motion to Compel Arbitration and Memorandum of Law in Support Thereof, the relationship between Plaintiff and Defendants and among Defendants, contracts signed, and issues that are the subject of the claims and defenses are so closely intertwined with the arbitration agreements as to compel arbitration.

Bron Studios also joins the Creative Defendants' request that this Court stay the proceeding if it finds that one or more of Plaintiff's claims should be referred to arbitration and adopts its co-defendants' reasoning for the request. The FAA "mandate[s] a stay of litigation if 'the issue involved is referable to arbitration,' [and] 'enforcing an arbitration agreement and staying the litigation pending arbitration is a more efficient way of resolving all the interrelated disputes between'" the parties. *HG Estate, LLC v. Corporacion Durango S.A. De de C.V.*, 271 F. Supp. 2d 587, 596 (S.D.N.Y. 2003) (quoting 9 U.S.C. § 3).

Finally, like the Creative Defendants, if this Court holds that Plaintiff's clear agreement to arbitrate the claims in this matter will not be enforced, Bron Studios will move to dismiss Plaintiff's claims—in so far as they apply to Bron Studios—pursuant to Federal Rule of Civil Procedure 12. While Bron Studios continues to assert that it is premature to discuss the merits of Plaintiff's claims while the issue of arbitration is before this Court, in a motion to dismiss Bron Studios would likely assert—among other things—that Plaintiff has misread or misapplied the relevant contracts to allege any liability for Bron Studios, that Plaintiff's improper group pleading masks the fact that Bron Studios' actions are not at issue in the matter, and that Plaintiff's non-contract-based claims are otherwise insufficiently pleaded to assert a viable cause of action.

                Respectfully submitted,
                /s/ Joshua I. Schiller

cc: **VIA ECF**
All Counsel of Record

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards, New York, NY 10001 | (t) 212.446.2300 | (f) 212.446.2350 | www.bsfllp.com