# EXHIBIT Q



Kevin Fritz
*Partner*
Direct (212) 655-3570
Fax (646) 539-3570
kaf@msf-law.com

January 20, 2022

<u>Via ECF</u>
Hon. Cathy Seibel
The Hon. Charles L. Brieant Jr. Federal Building and Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re:    *Hudson Private LP v. Bron Studios USA, Inc. et al*, **No. 7:21-cv-08259-CS**

Dear Judge Seibel:

As counsel for plaintiff Hudson Private LP ("Plaintiff"), we write in response to defendants' letters dated December 8, 2021, which primarily seek to compel arbitration of claims not asserted herein.

**<u>Background</u>**
The Complaint alleges that, in breach of written term sheets and related participation agreements (the "Loan Agreements"), defendants Creative Wealth Media Finance Corp. ("Creative Wealth"), Bron Creative USA, Corp. "Bron Creative"), Jason Cloth (collectively, the "Creative Defendants"), and Bron Studios USA, Inc. ("Bron Studios") failed to repay and account for an aggregate of over $14 million advanced by Hudson (collectively, the "Film Loans") in connection with the production of four specific films: *Fonzo/Capone*; *Greyhound*; *Bombshell*; and *Harry Haft* (collectively, the "Complaint Films").

**<u>The New York Forum Selection Clause</u>**
The Loan Agreements *do not* contain arbitration clauses, but rather clauses: (a) designating either this Court or the courts of the Province of Ontario as the non-exclusive forum to litigate a dispute; and (b) waiving objection to venue in such courts. For instance, the Participation Agreements for the films *Greyhound* and *Bombshell* (which incorporate their respective term sheets) provide:

> This Agreement will be governed by, interpreted and enforced in accordance with the laws of the State of New York and the laws of the United States applicable therein without regard to the conflict of law principles thereof. Financier and Lender irrevocably attorns and submits to the non-exclusive jurisdiction of the state or federal court located in New York, New York (or in any appellate courts thereof) with respect to any matters arising out of this Agreement and waives objection to the venue of any proceeding in such court or that such court provides an inconvenient forum.

The Creative Defendants and/or Bron Studios are defendants in at least *fourteen other lawsuits* regarding their default under loans made to finance films, including *Preserver, L.P. v. Creative Wealth Media Finance Corp. and Jason Cloth*, No. 1:21-cv-02456 (S.D.N.Y.), which is pending in this Court. The Participation Agreement at issue in *Preserver* contains the exact same (aforementioned) New York forum selection clause. (Dkt. 1-1).

Defendants seek to compel arbitration based upon three separate documents, each entitled "Term Sheet Purchase of Motion Picture Library" (the "Library Purchase Term Sheets") and pursuant to which Creative Wealth acquired Hudson's interest in *other* loans that financed specific films *not at issue herein* (collectively, the "Other Films"). Furthermore, the narrow dispute resolution clause in the Library Purchase Term Sheets is not only limited to disputes "concerning *this* Term Sheet" but it also provides that the parties thereto submit to the jurisdiction of New York State courts, a significant fact omitted from Defendants' letters:

> This Term Sheet shall be governed by and interpreted in accordance with the laws of the State of New York and the federal laws of the United States applicable therein, notwithstanding the rules regarding conflict of laws of the respective jurisdiction of the Parties and the Parties hereto *irrevocably attorn to the jurisdiction of the courts of the State of New York*.
>
> Disputes and matters of interpretation concerning **this Term Sheet** shall be resolved first by mediation … and if such mediation is not successful, such dispute shall be referred to a final and binding determination by a single arbitrator appointed from the panel of the Judicial Arbitration & Mediation Services, Inc. ….

(emphasis added). Defendants also pursue arbitration based upon an Executive Producer Agreement (the "EP Agreement") to which neither Hudson nor most Defendants are parties, concerning services (the "Services") for certain films *not at issue herein*.

The claims herein concern whether Defendants performed their obligations under the Loan Agreements relating to financing for the Complaint Films, and *not* a dispute concerning the Library Purchase Term Sheets or the EP Agreement. Indeed, Defendants do not even explain how rights or obligations under the Library Purchase Term Sheets or the EP Agreement are implicated herein.

**There is No Agreement to Submit Hudson's Claims to Arbitration**
"[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). "It is well settled that … whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296 (2010).

The Complaint alleges breach of the Loan Documents (Dkt. 1, ¶¶ 82, 88, 95, 101, 110, 116, 123), which do not contain arbitration clauses.  Specifically, the Complaint alleges Defendants failed to repay specific Film Loans made by Hudson to finance specific Complaint Films. (*Id.*). Construction of the Library Purchase Term Sheets or the EP Agreement is *not* required to resolve the dispute, and the parties' rights or obligations under those documents are *not* implicated herein. *See MAT Movies & Telev. Prods. GMBH & Co. Project IV KG v. RHI Entert. Distr., LLC*, 752 F.Supp.2d 373 (S.D.N.Y. 2010) (denying motion to dismiss based upon arbitration clause in separate agreement).

Arbitration will not be compelled absent the parties' "clear, explicit and unequivocal agreement to arbitrate." *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008).  The Library Purchase Term Sheets upon which Defendants heavily rely contain dispute resolution provisions that *conflict*: the parties thereto both "irrevocably attorn to the jurisdiction of the courts of the State of New York" and agree to resolve certain disputes (though not this one) via mediation and arbitration.

Indeed, the Library Purchase Term Sheets demonstrate that, *at most*, the parties intended to arbitrate only disputes concerning those Term Sheets: "Disputes and matters of interpretation concerning **this Term Sheet** shall be resolved first by mediation … and if such mediation is not successful, such dispute shall be referred to a final and binding determination by a single arbitrator…." Hudson's claims herein do not concern the Library Purchase Term Sheets, but rather derive from the Loan Agreements.  The Loan Agreements concern the four Complaint Films, which are *different* from the Other Films identified in the Library Purchase Term Sheets. *See Enel Green Power N. Am., Inc. v. Geronimo Energy, LLC*, No. 18-cv-5882, 2019 WL 4805659, at *4 (S.D.N.Y. Sept. 30, 2019) (existence of earlier agreement subjecting parties to arbitration does not affect proprietary of Court deciding merits of claims that do not relate to such agreement).

**Any Agreement to Arbitrate Was Superseded**
In *Goldman Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014), the Second Circuit held that "a forum selection clause requiring 'all actions and proceedings' to be brought in federal court supersedes an earlier agreement to arbitrate."  In two of the Participation Agreements, Creative Wealth consents to the jurisdiction of this Court and waives any objection to venue herein.  Although Hudson's choice of forum is not mandatory (but permissive), once Hudson chose this Court as the forum to litigate a dispute, Creative Wealth's consent is mandatory. *See Ramada Franchise Sys., Inc. v. Cusack Dev., Inc.*, No. 96-cv-8085, 1997 WL 304885, at *3 (S.D.N.Y. June 6, 1997).  Hence, even assuming the Library Purchase Term Sheets do not contain conflicting dispute resolution provisions (which they do), and further assuming the narrow arbitration clause therein covered more than disputes concerning "th[ose] Term Sheets" (which they do not), to the extent that those Library Term Sheets were executed prior to the Participation Agreements, the forum selection clause supersedes any earlier, conflicting agreement to arbitrate.

**Hudson is Not a Party to the EP Agreement**
As for the EP Agreement, it is between Creative Wealth "and its affiliates" and *non-party* Hudson Private Corp.  Recognizing that Hudson Private LP (plaintiff herein) is not a party to the EP Agreement and thus is not subject to its arbitration clause, Defendants contend that Hudson should be equitably estopped from avoiding arbitration. However, Defendants do not explain how, and

cannot show that, Hudson knowingly accepted the benefits of the EP Agreement and *relied upon its terms in pursuing its claims herein*, as required for estoppel. *Norcast, S.a.r.l. v. Castle Harlan, Inc.*, No. 12-cv-4973, 2014 WL 43492, at *6 (S.D.N.Y. Jan. 6, 2014). The Complaint does not rely on the terms of the EP Agreement or seek to enforce rights thereunder.

Moreover, the EP Agreement pertains to executive producer services for specified "Pictures" (*The Good Liar, Needle in a Time Stack, Nightingale, and Warner Brothers Slate*), and neither those services nor the films are at issue herein. Defendants fail to explain how the claims herein, which involve breaches of the Loan Agreements, which were executed in connection with the four Complaint Films, constitute disputes "arising out of or related to" the EP Agreement. Stated differently, the claims herein are not "inextricably intertwined" with the EP to justify compelling arbitration under an estoppel theory. *See Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp.2d 580, 591–92 (S.D.N.Y. 2005) (declining to find "intertwined-ness" when signatory's claims against non-signatory did not "aris[e] out of," were not "integrally related to," and did not "make reference to or presume the existence of" the underlying contract).

### The Only Stay Should Be to Obtain Discovery from Defendants

Bron Studios admits it "is not party to any arbitration agreement," but seeks to compel arbitration because it is "associated with Creative Wealth through its relationship with Bron Creative." Because a non-signatory may only enforce an arbitration agreement it if owns or controls a signatory defendant, *Ross v. American Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008), Hudson is, at a minimum, entitled to discovery on the relationship between Bron Studios and the Creative Defendants. *Global Comm. Group, LLC v. National Union Fire Ins. Co.*, No. 13-cv-2063, 2013 WL 4713547, at *6 (S.D.N.Y. Aug. 29, 2013).

### The Complaint Adequately States a Claim

Without any analysis, Defendants quickly mention they intend to move to dismiss the Complaint because Hudson "misinterprets" the relevant contracts. Notably, in the *Preserver* case, Judge J. Paul Oetken denied Creative Wealth and Mr. Cloth's motion to dismiss based upon the same argument on a similar contract. (Dkt. 37). The Creative Defendants' argument that Hudson "fails to demonstrate" it lacks an adequate remedy or "cannot establish" a fiduciary relationship overlooks that Hudson need not demonstrate or establish anything at this procedural juncture, but rather only state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, one may assert a claim seeking to hold a party liable for another's contractual obligations under an alter ego or veil-piercing theory. *Getty Prop. Corp. v. Lukoil Am. Corp.*, 170 A.D.3d 539, 541 (1st Dep't 2019).

Respectfully submitted,

/s/ Kevin Fritz

Cc:    All Counsel of Record (via ECF)